# DUNHAM v. DENNISON MANUFACTURING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 294. Argued March 16, 19, 1894. — Decided May 26, 1894.

The reissue of June 10, 1884, by which the patent of May 8, 1883, to Joseph T. Dunham, for a combined tag and envelope, with an end flap covering the side of the envelope, was so enlarged as to include an envelope with a flap of any size or shape, is void.

The patent of November 24, 1885, to Joseph T. Dunham, for an improvement in tag envelopes, with a flap so constructed that it can be opened and the contents taken out without tearing the envelope or removing or breaking the fastenings, is not infringed by an envelope in which the flap is fastened down so that it cannot be opened without injury, and the contents are taken out by opening a flap at the opposite end of the envelope.

THIS was a bill in equity for the infringement of two patents for inventions, granted by the United States to the plaintiff; the one a reissue, dated June 10, 1884, of a patent issued May 8, 1883, for "a new and improved combined tag and envelope;" and the other an original patent, dated November 24, 1885, "for certain improvements in envelopes." Upon a hearing in the Circuit Court on pleadings and proofs, the bill was dismissed, for the reasons stated in the opinion of Judge Coxe, which was as follows:

"This is an equity action, founded upon two letters patent granted to the complainant. The first, a reissue patent, No. 10,488, dated June 10, 1884, is for a combined tag and envelope; and the second, No. 331,118, dated November 24, 1885, is for an improvement in envelopes.

"The reissued patent will be first considered. The defences are lack of novelty and invention, non-infringement, and that the reissue is void because of an unwarrantable expansion of its claims. The original patent, No. 277,245, was dated May 8, 1883. The application for the reissue was filed March 18, 1884, ten months and ten days thereafter.

" The invention of the original was limited, as clearly as the drawings and the language of the description and claims could limit it, to an envelope having at one end a flap of sufficient size to cover one side of the envelope. The inventor says : ' The object of the invention is to form an envelope with an end flap covering its side, as hereinafter described. . . . An envelope, A, preferably made of strong water-proof paper, is provided with an end flap, B, of sufficient size to cover the entire envelope. An eyelet, C, is secured in that end of the envelope opposite to the one to which the flap B is attached ; and the flap B is provided on its free end with an eyelet, D, which, when the flap B is folded over the envelope, rests upon the eyelet C.' He then describes the manner in which the name of the consignee is concealed by writing it on the inside of the flap, so that dealers engaged in the same business cannot ascertain the names of their rivals' customers. The name of the consignor is printed on the outer surface of the flap, where also appears the name of the city or town to which the goods are destined ; and a notice to carriers that the full name of the consignee may be found on the inner surface.

" It is evident that the patentee considered this peculiar form of flap the main feature of his invention. It is also clear that an envelope which does not include a flap large enough to cover its side does not infringe the claims, which are as follows :

" ' 1. A combined tag and envelope, made substantially as herein shown and described, and consisting of an envelope having at one end a flap of sufficient size to cover one side of the envelope, as set forth.

" ' 2. In a combined tag and envelope, the combination, with an envelope, A, having a flap, B, at one end, of the eyelet D in the free end of the flap, and the eyelet C in that end of the envelope opposite the one to which the flap is attached, substantially as herein shown and described, and for the purpose set forth.'

" The specification is perfectly plain. There is no ambiguity about the description, and the claims, in language equally clear, cover what is said to be the invention, and the whole thereof.

" Soon after the patent was granted, the defendant, in the summer of 1883, commenced manufacturing tag envelopes, which the complainant insists are infringements of the reissue, but frankly admits that they do not infringe the original patent, for the reason that they do not have the flap B.

" The reason for the reissue is thus stated in the complainant's brief : ' Soon after putting the patented article on the market, complainant was informed that defendant, a corporation that had for some time manufactured in Boston and made extensive sales throughout the country of a shipping tag, was manufacturing and selling a tag envelope similar to complainant's. Complainant immediately applied to counsel for the purpose of commencing suit against defendant, and was advised by such counsel, after an examination of his letters patent and a statement of his invention and application, that his patent was defective, indefinite and ambiguous in its claims, so as to render it practically inoperative, and that he had better apply for a reissue.'

" The patentee himself states that the alleged infringing envelope of the defendant was one of the forms ' invented by him, but not shown in his patent,' and he therefore sought a reissue which would cover it.

" Turning now to the reissue, it is manifest that the effort was to discard the flap B as an element of the invention, and expand the claims sufficiently to cover an envelope, no matter what the size or shape of its flap. The invention no longer consists in ' an envelope with an end flap covering its side,' as in the original, but ' in a tag provided with means for attaching it to the merchandise, and with an envelope or pocket to receive a bill or invoice of the merchandise.' The drawings are referred to as showing the invention ' in its preferred form.' The end flap is no longer ' of sufficient size to cover the entire envelope,' but it must cover it ' substantially.' The claims of the reissue are as follows :

" ' 1. A combined tag and envelope, substantially as described, wherein the flap which closes the mouth of the envelope is fastened down by the cord or other device which secures the tag to the merchandise, as set forth.

" ' 2. A combined tag and envelope, substantially as described, the flap having an eyelet hole which, when the flap is folded down on the envelope, coincides with an eyelet hole in the envelope, whereby the cord or hook for attaching the tag may be passed through both holes, substantially as set forth.

" ' 3. In a combined tag and envelope, the combination, with an envelope, A, having a flap, B, at one end, of the eyelet D in the free end of the flap, and the eyelet C in that end of the envelope opposite the one to which the flap is attached, substantially as herein shown and described, and for the purpose set forth.'

" The third claim of the reissue is the same as the second of the original, but it is not contended that this claim is infringed. Claims one and two of the reissue are unquestionably broadened. They are no longer limited to a flap of sufficient size to cover the entire envelope. Should the court hold that they are so limited, it is admitted that they are not infringed.

" It is thought that these expanded claims cannot escape the force of the repeated decisions of the Supreme Court relating to reissued patents.

" The patentee made no move until the defendant had produced its envelope, which could be sold without infringing the original patent. If he had been the first inventor of this new and improved form, he might have described and claimed it in the original patent. He did neither. He now seeks by the reissue to include structures and improvements which were neither described nor claimed in the original. This he cannot do. The defendant has acquired valuable rights which cannot be trampled upon in this manner.

" The law upon this subject is too well settled to require a citation of authorities; but the case of *Coon* v. *Wilson*, 113 U. S. 268, seems peculiarly applicable and controlling. Substitute the nomenclature pertaining to envelopes for that relating to collars, and the opinion in *Coon* v. *Wilson* is as applicable to this controversy as if written for the purposes of this action only : ' Although this reissue was applied for

a little over *ten* months after the original patent was granted, the case is one where it is sought merely to enlarge the claim of the original patent, by repeating that claim and adding others; where no mistake or inadvertence is shown, so far as the *extended flap* is concerned; where the patentee waited until the defendant produced *its short-flapped envelope,* and then applied for such enlarged claims as to embrace the defendant's *envelope,* which was not covered by the claim of the original patent, and where it is apparent, from a comparison of the two patents, that the reissue was made to enlarge the scope of the original. As the rule is expressed in the recent case of *Mahn* v. *Harwood,* 112 U. S. 354, a patent cannot be lawfully reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake, inadvertently committed, in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted. But a clear mistake, inadvertently committed, in the wording of the claim is necessary, without reference to the length of time. In the present case there was no mistake in the wording of the claim of the original patent. The description warranted no other claim. It did not warrant any claim covering *an envelope not provided with the flap B.'*

"The second patent in controversy, No. 331,118, dated November 24, 1885, is for an improvement in envelopes intended for mailing samples and similar matter, and for use as tags for marking goods to be shipped. The defences are abandonment, lack of novelty and invention, and non-infringement.

"The principal object of the invention, as stated in the specification, was to obviate the difficulty which existed in prior devices, which were so constructed that, in order to get at the contents of the envelope, it was necessary to untie the string or remove the fastening which secured the flap. The envelope of the patent is so constructed that the flap can be opened, when desired, and the contents inspected, without tearing the envelope, or removing or breaking the fastenings. The claims are as follows:

" ' 1. An envelope having a flap, C, provided with a reinforced hole, $c'$, and having a similar hole, $c$, in the front ply of its body, and the said holes constructed to register or coincide when the flap C is folded down, whereby the end of the back ply, $b$, of the envelope body, which extends entirely across the latter, is clamped and removably secured, substantially as shown and described.

" ' 2. A mailing and tag envelope having a flap, C, folded over and secured down to the inner face of the front ply of the body, the said flap being also constructed to take over the free end of the back ply of the body, as shown, whereby the mouth of the envelope covered by the said flap C is secured against accidental opening, substantially as and for the purposes set forth.'

" In view of what was known when the patent was applied for, a broad construction of these claims is out of the question. A construction which would include the defendant's envelope would render the claims void for lack of novelty, for the general features of the patented envelope are shown in the patent No. 81,962, September 8, 1868, to Sigmund Ullman, and in other prior structures. If the claims are limited to the peculiar construction shown in the specification and drawings, the defendant does not infringe. In the defendant's envelope one eyelet is used, which aids the gum in fastening the flap down permanently upon the back ply of the envelope.

" A large number of exhibits have been introduced, showing the defendant's envelope. These have been changed and mutilated by the witnesses in illustrating opposing theories. But both sides apparently agree that the envelopes made by the defendant since the date of this patent are constructed with the eyeletted flap securely fastened. The complainant's brief contains this statement: ' After defendant put its tag envelope on the market, it changed the construction several times, until it finally adopted the form introduced in evidence as the infringing specimen. See complainant's Exhibit Taylor and Mayo, which was received in 1883, and also has the eyelet-holes, with washers only ; also complainant's Exhibit John S.

Smith, which was received in 1884, and has the washers reinforced with a short metallic eyelet, with the eyeletted end tightly gummed down; also Exhibit Alonzo B. Smith, received in 1886, with printed advertisement on front, which had the eyeletted end tightly gummed, with washers reinforced by short metallic eyelets.'

" Evidently it is not intended that the defendant's envelope shall be opened and the contents removed at the end thus securely fastened. The bill or invoice is inserted at the opposite end; the flap at that end is then fastened down, in the well-known manner, by moistening the gum by which it is provided, or the flap may be tucked in between the plies. In other words, the defendant takes an ordinary envelope with the opening at one end; and at the other end, which is never intended to be opened, he puts an eyelet reinforced by washers through the front ply, a portion of the back ply, and the flap of the envelope. The sole object of the eyelet is to provide a suitable hole into which the cord or hook which fastens the envelope to the merchandise may be introduced. The effect of the eyelet and washers is to prevent the back ply from being left free at this end. The defendant has not the object of the patent in view, and does not adopt the patented device.

" In complainant's envelope, according to the theory of his expert witness, ' the leading idea or principle of the invention is the holding down of the back ply of the envelope by the overlapping of the flap thereon, and the omission of any permanent or secure attachment of the flap to said back ply. . . . The claims are limited to this end of the back ply being left free.' This feature is entirely wanting in defendant's envelope. Instead of omitting the secure attachment, he has added the metallic eyelet and washers to the gum of the ordinary envelope. The claims must be restricted to the form and description of the patent, and thus construed they are not infringed.

" It is unnecessary to examine the other defences presented. The bill is dismissed." 40 Fed. Rep. 667.

From the decree of the Circuit Court dismissing the bill the plaintiff appealed to this court.

*Mr. Charles G. Coe,* (with whom was *Mr. Arthur S. Browne* on the brief,) for appellant.

*Mr. W. W. Swan* for appellee.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The facts of this case, and the reasons against maintaining the suit, are so clearly and fully stated in the opinion delivered in the Circuit Court, that there is no occasion for extended discussion.

The patent of May 8, 1883, was expressly and distinctly, both in the specification and in the claims, limited to an envelope, with an opening at one end; with a flap, attached to the envelope at that end, of sufficient size to cover the whole of that side of the envelope in which the opening was; and with an eyelet in the flap, resting on an eyelet in the opposite end of the envelope, through which eyelets the flap could be secured to the envelope, and both flap and envelope be fastened to the object to be carried. The patentee thus gave the public to understand that an envelope, the flap of which did not cover its whole length, would not come within his patent, and might rightfully be made by any one. After the defendant had made envelopes with a short flap of semi-circular shape and covering little more than the opening of the envelope, (which, it is admitted, did not infringe the plaintiff's patent as originally issued,) the plaintiff obtained a re-issue, enlarging the claims, and altering the specification throughout, so as to include an envelope with a flap of any size or shape, and to make the invention consist, not, as in the leading words of the description in the original patent, of " an envelope with an end flap covering its side," but in " a tag provided with means for attaching it to the merchandise, and with an envelope or pocket to receive a bill or invoice of the merchandise." The words of the description in the original patent were neither technical nor complicated; but they were of the simplest kind, and their meaning and scope could

not have been misunderstood by any one who read them with the slightest attention, least of all by the patentee. To uphold such a reissue under such circumstances would be to grant a new and distinct privilege to the patentee at the expense of innocent parties, and would be inconsistent with the whole course of recent decisions in this court. *Miller* v. *Brass Co.*, 104 U. S. 350; *Mahn* v. *Harwood,* 112 U. S. 354; *Coon* v. *Wilson,* 113 U. S. 268; *Topliff* v. *Topliff,* 145 U. S. 156; *Huber* v. *Nelson Co.*, 148 U. S. 270; *Leggett* v. *Standard Oil Co.*, 149 U. S. 287; *Corbin Co.* v. *Eagle Co.*, 150 U. S. 38.

The patent of November 24, 1885, has clearly not been infringed by the defendant; for the peculiar feature of this patent consists in the flap being constructed so that it can be opened, and the contents taken out, without tearing the envelope or removing or breaking the fastenings; whereas in the defendant's envelope that flap is fastened down so that it cannot be opened without injury to it or to the envelope, and the contents are taken out by opening a flap, no more firmly secured than with gum, at the opposite end of the envelope.

Upon these grounds, without considering the questions of lack of novelty and invention in the several patents, the entry must be

*Decree affirmed.*