# IN RE STARKEY.

PATENTS; REISSUE; LACHES; ATTORNEY AND CLIENT.

1. After the lapse of two years after the issue of a patent, a reissue which seeks to enlarge the claims of the original patent will not be granted, or if granted, will be held invalid, unless special circumstances are shown to excuse the delay.

2. An application for a reissue with broader claims is properly rejected when made six years after the grant of the patent, the claims of which were not difficult to be understood, during which period it was subject to several transfers, and when the only excuse for the delay is the uncorroborated statement of the applicant that he was unaware of the narrow scope of his claims until an infringement case was decided adversely to him; the maxim that ignorance of the law will excuse no one, applying in such a case.

3. The client is chargeable with the action, mistake, or inadvertence of his attorney.

No 234. Patent Appeals. Submitted March 11, 1903. Decided April 7, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for the reissue of a patent.　　　　　*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Richard P. Elliott* for the appellant.

*Mr. John M. Coit* for the Commissioner.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents refusing a reissue of a patent.

On March 17, 1896, letters patent of the United States No. 556,565 were issued to the applicant for an "adjustable school-desk and seat," in which the claims stated and secured were these seven:

"1. An adjustable desk and seat combined, consisting of two sets of legs or standards, of the desk proper, vertically adjustable on said standards, a back to said desk, a seat adjustably arranged on said standards and movable at an acute angle to the desk, and a back forming part of the seat, said back being independent of the back of the desk and clearing the same, substantially as and for the purposes described.

"2. An adjustable desk and seat combined, consisting of two sets of legs or standards, of the desk proper vertically adjustable on said standards, a back to said desk, a seat adjustably arranged on said standards and movable at an acute angle to the desk, a back forming part of the seat, being independent of the back of the desk, and means for adjusting the desk and seat independently of each other, substantially as and for the purposes described.

"3. An adjustable desk and seat combined, consisting of two sets of legs or standards, each standard being provided with a vertical slot, a rack-bar on one side of said slot, the desk proper provided with a back and having on each side a depending arm engaging the legs or standards, a rod passing through said arms and provided with screw-threaded ends, a blind nut on one end of said rod, a clamping-nut on each end of said rod, a hollow shaft on said rod and secured with one end to the blind nut, a pinion secured near each end of said hollow shaft and engaging its respective rack-bar, a seat adjustably arranged on the standards and movable at an acute angle to the desk and having a back independent of the back of the desk and clearing the same, and means for locking the said seat on the standards, substantially as and for the purposes described.

"4. An adjustable desk and seat combined, consisting of two sets of legs or standards, each standard being provided with a vertical slot and with a. slot at an acute angle to the

vertical slot, a desk adjustably arranged in said vertical slot and provided with a back, a seat adjustably arranged in the other slot and adapted to be moved in a plane at an acute angle to the desk, a back forming part of said seat, said back being independent of the back of the desk, and clearing the same, and means for adjustably securing the desk and seat independently of each other, substantially as and for the purposes described.

" 5. An adjustable desk and seat combined, consisting of two sets of legs or standards, each standard being provided with a vertical slot and with a slot at an acute angle to the vertical slot and having wedge-shaped outer sides, a rack-bar on one side of each slot, a desk provided with a back and having depending arms, each of said arms having inwardly-extending wedge-shaped flanges adapted to engage the wedge-shaped sides of the standards, a horizontally-arranged rod connecting said depending arms of the desk, clamping-nuts on the outer ends of said rods, a hollow shaft on said rod, a pinion on each end of said hollow shaft and engaging the rack-bars of the vertical slot, a seat provided with a back independent of the back of the desk and having on each side a depending arm with inwardly-projecting wedge-shaped flanges adapted to engage the wedge-shaped outer sides of the standards (on each side of the inclined slot), a rod connecting the depending arms of the seat, clamping-nuts on each end of the rod, a hollow shaft on said rod and a pinion on each end of the hollow shaft and engaging the rack-bars of the inclined slot, all said parts, substantially as and for the purposes described.

" 6. In an adjustable desk, the combination with the legs or standards, each provided with a slot, of a rack-bar on one side of said slot, the desk proper having depending arms adapted to bear against the legs or standards, a rod connecting said arms and provided with screw-threaded ends, a hollow clamping-nut on each of said ends, a hollow shaft on the rod, and a pinion on each end of the hollow shaft and engaging the rack-bars of the slots, and adapted to bear against the legs or standards, when the clamping-nuts are

tightened, all said parts, substantially as and for the purposes described.

"7. In an adjustable desk, the combination with the legs or standards, each provided with a slot, of a rack-bar on one side of said slot, the desk proper having depending arms adapted to bear against the legs or standards, a rod connecting said arms and provided with screw-threaded ends, a hollow shaft on said rod, a blind nut on one end of said rod and secured to said hollow shaft, a pinion on each end of said hollow shaft and engaging the rack-bars of the slot and adapted to bear against the legs or standards, and a hollow clamping-nut on each end of the rod and bearing against the outer faces of the depending arms, all said parts, substantially as and for the purposes described."

On November 26, 1897, upward of a year and eight months after their issue these letters patent were assigned by the patentee to the Inventor's Novelty Manufacturing Company, of Paterson, N. J. On February 13, 1900, they were reassigned to the patentee, who on the same day assigned them to E. E. Malmar, who also on the same day assigned them to the American School Furniture Company, a corporation under the laws of the State of New Jersey; and this company, it seems, yet remains the owner of them. It may be added that the invention protected by these letters patent is claimed to be an improvement upon a previous invention by the same party protected by letters patent No. 537,081 issued on April 9, 1895, and assigned also by the assignment of February 13, 1900, to the American School Furniture Company.

In August, 1900, as it appears, the attention of the American School Furniture Company was called to the fact that a company in Philadelphia, known as the J. M. Sauder Company, was manufacturing a school-desk which was believed by the officers of the American School Furniture Company to be an infringement of their Patent No. 556,565. In October, 1900, suit for infringement was instituted by the American School Furniture Company against the Sauder Company, with the result that the court, which heard the

cause, refused, as it is alleged, to consider any of the claims of the applicant's patent other than those numbered 6 and 7, and decided that these were not infringed by the Sauder Company. The decision is found reported in 113 Fed. Rep. 576. Confessedly induced by this decision, the American School Furniture Company, in the name of the applicant, filed, on February 4, 1902, the present application for a re-issue, in which it is sought to broaden and enlarge the claims of the patent, on the ground that they had been inadvertently restricted by the applicant's attorney and the applicant did not know of the mistake until the result of the litigation with the Sauder Company pointed it out to him.

After much alteration and amendment, withdrawal and restoration of claims, which somewhat confuse the record before us, it appears that the application for reissue contains ten claims, of which those numbered 1, 2, 3, 9 and. 10 correspond to claims 1, 2, 4, 6 and 7 respectively of the patent, and those numbered 4, 5, 6, 7 and 8 are entirely new, and all broader than any claim of the patent. We find no claim numbered 8 in the record before us, except such as has been erased in the course of amendment. Claims numbered 4, 5, 6 and 7 are as follows:

" 4. An adjustable desk consisting of two sets of legs or standards, each standard being provided with a vertical slot, the desk proper having on each side a depending arm engaging the legs or standards; a rod passing through said arms and provided with screw-threaded ends; a clamping-nut on each end of said rod; and an interposed medium between said standards against which said standards and depending arms are clamped when the nuts on the rod are tightened.

" 5. An adjustable desk consisting of two sets of legs or standards, each standard being provided with a vertical slot and guiding means; the desk proper provided with depending arms having guiding means adapted to engage the guiding means of the legs or standards; a rod passing through said arms and provided with screw-threaded ends; a clamping-nut on each end of said rod; a hollow shaft on said rod;

pinions secured near each end of said hollow shaft adapted
to engage rack-bars on the standards; and means for re-
volving said hollow shaft from one side of the desk.

" 6. In an adjustable desk, the combination with the legs
or standards, each provided with a slot, of a rack-bar on one
side of said slot, the desk proper having depending arms
adapted to bear against the legs or standards, a rod connect-
ing said arms and provided with screw-threaded ends, a
hollow clamping-nut on each of said ends, a hollow shaft on
the rod, and a pinion on each end of the hollow shaft and
engaging the rack-bars of the slots, and adapted to bear
against the legs or standards, when the clamping-nuts are
tightened, all said parts, substantially as and for the pur-
poses described.

" 7. In an adjustable desk, the combination with the legs
or standards, each provided with a slot, of a rack-bar on one
side of said slot, the desk proper having depending arms
adapted to bear against the legs or standards, a rod connect-
ing said arms and provided with screw-threaded ends, a
hollow shaft on said rod, a blind nut on one end of said rod
and secured to said hollow shaft, a pinion on each end of
said hollow shaft and engaging the rack-bars of the slot and
adapted to bear against the legs or standards, and a hollow
clamping-nut on each end of the rod and bearing against the
outer faces of the depending arms, all said parts, sub-
stantially as and for the purposes described."

It appears, further, that, in the interval between the date
of the issue of the patent No. 556,565 (March 17, 1896)
and the date of the present application for a reissue (Febru-
ary 4, 1902), letters patent had been issued to one Cobb,
on February 29, 1897, to one Cogger, on November 27,
1900, and to one Hudson on March 5, 1901, for school desks
and seats, some or all of which are assumed by the Patent
Office to anticipate these new claims of the present applica-
tion.

It also appears from the decision of the United States
Circuit Court for the eastern district of Pennsylvania, in
the case of the applicant's assignee against the Sauder Com-

pany (113 Fed. Rep. 576), that the Sauder Company's construction differed from that of the applicant's patent in this that it omitted the applicant's connecting-rod and so arranged the other elements of the combination as to produce a less complex result.

The decision of the several tribunals of the Patent Office was against the application for a reissue, mainly on the ground of the applicant's laches in his delay for nearly six years to make the application.

We are of opinion that the Commissioner's decision adverse to the applicant is entirely right and just, and that it is fully warranted by the authorities. The cases of *Miller* v. *Brass Co.,* 104 U. S. 350; *Mahn* v. *Harwood,* 112 U. S. 354; *Wollensak* v. *Reiher,* 115 U. S. 96; *Brown* v. *Davis,* 116 U. S. 237; *White* v. *Dunbar,* 119 U. S. 47; *Leggett* v. *Standard Oil Co.,* 149 U. S. 287; *Topliff* v. *Topliff,* 145 U. S. 156; *Huber* v. *Manufacturing Co.,* 148 U. S. 270; *Dunham* v. *Manufacturing Co.,* 154 U. S. 103, and various other cases that might be cited, are decisive of the question; and we must now regard the law as well settled by the Supreme Court of the United States, that, after the lapse of two years after the issue of a patent, a reissue which seeks to enlarge the claims of the original patent will not be granted, or if granted will be held invalid, unless special circumstances are shown to excuse the delay. No such circumstances are shown in the present case. No excuse whatever is presented for the delay, except the uncorroborated statement of the applicant that he did not know that the claims of his patent were as narrow as they proved to be until the fact was demonstrated to him by the decision in the suit against the Sauder Company. But this mistake, if such it was at all, was one of law, not of fact. The claims of the original patent are not difficult to be understood. As Mr. Justice Gray, speaking for the Supreme Court of the United States in the case of *Dunham* v. *Denison Manufacturing Co.,* 154 U. S. 103, said:

" The words of the description in the original patent were neither technical nor complicated; but they were of the

simplest kind, and their meaning and scope could not have been misunderstood by any one, least of all by the patentee."

It is true that to the ordinary person unacquainted with patents the verbiage of the claims and specifications contained in patents is often, perhaps generally, unintelligible. But certainly a patentee should know what he has discovered or invented, and should be able to read his own patent correctly. It will not do to make the attorney in all cases responsible for mistakes, if mistakes there are; for it is a necessity of human action, as well as of human law, to charge the client with responsibility for the action, mistake, or inadvertence of the attorney. We are not satisfied that there was mistake or inadvertence in the present case. But, if there was, the patentee had the patent in his hands for upward of five years, during which it was the subject of several transfers and in the course of which we may assume that it was submitted to the scrutiny of several attorneys; and during that time he should have discovered the extent and character of the claims contained in the patent. The maxim that ignorance of the law will excuse no man, must apply here as elsewhere, if the contention be that the applicant was ignorant of the scope of his claims. It was simply a reaffirmation of a well-known rule of the patent law which is claimed to have finally opened his eyes,— the rule stated in the Sauder Company case, that "nothing is better settled in the law of patents than the rule that a claim for a combination is not infringed if any one of the described or specified elements is omitted, without the substitution of anything equivalent thereto."

We are entirely satisfied of the correctness of the Commissioner's decision, and we do not desire to add anything thereto. We think it should be affirmed.

The clerk of the court will certify this opinion, and the proceedings in this court in the premises, to the Commissioner of Patents according to law.          *Affirmed.*