# IN RE AMS.

IN RE AMS.

PATENTS; REISSUE.

1. The rule that a delay of two years in filing an application for a reissue of a patent with broader claims will usually be treated as an abandonment to the public of everything not claimed in the original is based upon the analogy between a reissue application and the case of an inventor who fails to apply for a patent of his invention within two years from the date of its public use or sale, which the statute ordains is conclusive evidence of its abandonment. (Citing *Re Starkey*, 21 App. D. C. 519.)

2. An application for a reissue with broader claims is properly rejected when made more than five years after the grant of the patent, which clearly and definitely described the invention,—a can designed for packing food,—where it appears that upon the grant of the patent the applicant discovered the patent was too narrow, but was advised by his then attorneys that its claim was as broad as the Patent Office would allow, and that he let the matter rest until his business of making cans so increased that the importance of giving his invention a wider scope became apparent to him.

3. The statement in the affidavit of an applicant for a reissue, that he knows of no one who is using his invention without his consent, or whose business will be affected by a reissue, will not justify this court in reversing a decision of the Commissioner of Patents adverse to the applicant, and directing the grant of a patent which might affect the business of those of whom the applicant has no information.

4. Applications for reissue, filed long after the date of the patent, and which have for their object the enlargement of its claims, should be discouraged, and countenanced only in exceptional cases.

No. 405. Patent Appeals. Submitted January 11, 1907. Decided February 5, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for the reissue of a patent.
*Affirmed.*

The facts are stated in the opinion.

*Mr. H. P. Doolittle* for the appellant.

*Mr. Fairfax Bayard* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from concurrent decisions of the Patent
Office tribunals refusing to reissue a patent. The original
patent, issued November 3, 1896, relates, quoting from the
specification, "to a sheet-metal can designed for packing food
products, and more particularly to an improved construction of
the seam between the can-body and the cover," and is described
in said specification as follows: "The sheet-metal cover is
countersunk or depressed at its center, so as to be provided with
an upright neck or shoulder, which is adapted to fit snugly
within the opening of the can-body. Around this neck the
cover is provided with the laterally extending flange, which
should be considerably wider than the flange. After the cover
has been pressed into the above-described form, its neck and
flange are covered with an air-excluding adhesive body that
adheres to the cover and constitutes in effect a packing. *This
coating consists of a layer of rubber cement, which may be
applied to the parts with a brush, and a thin layer of asbestos
pulp, which forms a film on the surface of the cement.*

\*          \*          \*          \*          \*          \*

The rubber in my improved packing forms the air-excluding
body proper, while the asbestos forms a coating or skin upon
the surface of the same, which greatly increases the tightness
of the joint. Thus a packing of superior merit is produced, and,
moreover, the resistance offered by the ordinary washers to the
crimping operation, and the consequent frequent imperfections
of the seam, are entirely avoided."

The application contained but one claim, which is as follows:
"The combination of a sheet-metal can with a flanged and coun-

tersunk cover, and with an adhesive coating secured to the cover, and consisting of rubber cement and an asbestos film, substantially as and for the purpose specified."

More than five years after the date of the original, namely, on March 31, 1902, appellant, Max Ams, filed his application for a reissue. Owing to the simplicity of the invention, the exactness with which it is described in the original application, the specific and limited nature of the claim therein, and the long delay attending the filing of this reissue application, we must carefully scrutinize the reasons assigned by the patentee why it should be allowed. The reissue claims are as follows:

"1. A metal can comprising a can-body and cover, and joined by a crimped seam having on one side of said parts at the seam portion a permanently fixed composition coating forming the packing means, substantially as described.

"2. A metal can for containing food products having a can-body and its cover joined by a crimp joint composed of overlapped and tightly closed flanges in combination with a heat-resisting, non-deleterious composition inherently adhesive in application, and fixed to the neck of the can at said joint in a dry coating or layer, and forming a packing between said flanges, substantially as described.

"3. An air and water-tight packing for a joint for a sheet-metal can-body and its cover designed for food products, consisting of an inherent adhesive, heat-resisting, non-deleterious, yielding coating dried on said cover and independent of the can-body, substantially as described.

"4. In a joint for a metal can-body and its cover, a fixed coating forming a packing for said joint and plastered on one of said parts, said coating consisting of an adherent and packing layer affixed to the article and an outside non-deleterious and heat-resisting layer or film, substantially as described.

"5. The combination of a sheet-metal can with a flanged and countersunk cover, and with an adhesive coating secured to the cover and consisting of rubber cement and an asbestos film, substantially as and for the purpose specified.

"6. A sheet-metal can designed for packing food products,

comprising a can body and a cover, said body and cover connected by a lap joint, in combination with a tight packing for sealing the cover and body independent of the lap joint, said packing consisting of a non-deleterious, heat-resisting, air-excluding, and adhesive plastered compound extending into every portion of the lap joint and between the inner surface of the can-body and the neck of the cover, substantially as described."

In appellant's affidavit accompanying his reissue application, he states that the original "letters patent do not protect and cover by their claim the real invention of deponent, nor its equivalent, but only a particular form of embodiment thereof, such defect being due to the omission to claim the following essential parts of the invention; namely, a fixed coating forming the packing in combination with the joint of the can and cover; second, the heat-resisting character of the coating, apart from the particular ingredients thereof; third, the non-deleterious character of the coating apart from the particular ingredients thereof; fourth, the feature of having a coating consisting of an adherent medium affixed to a complementary part of the article to be joined, and a heat-resisting and non-deleterious film or covering without limitation to the particular ingredients employed; fifth, in combination with the crimped joint of the can and cover, a packing consisting of an adhesive water and air tight, heat-resisting, non-deleterious coating applied to said cover,—all of which enumerated parts or features are essential characteristics of the coating described and claimed, or necessarily of any coating which is the true equivalent thereof." That he carefully explained his invention to his attorneys at the time of making the original application, and "informed his attorneys that he wanted to have a claim for an adhesive *coating* forming a packing in combination with the flanged and countersunk cover and lapped joint; that he does not believe that said attorneys ever understood the deponent's explanation of the value of his invention and its essential features; that deponent was informed by his attorneys that a claim such as he has above set forth could not be obtained; but that he is informed and believes that said attorneys did attempt to obtain a claim

or claims for an adhesive *packing*, but not for an adhesive *coating* forming a packing in combination with the flanged and countersunk cover and lapped joint, but that, upon the citation of references thereto, said attorneys canceled said claim or claims, and retained merely the claim now set forth in said letters patent;  *  *  *  that at the time said letters patent were issued and were examined by deponent he discovered that the claim thereof was limited to the combination of a sheet-metal can with a flanged and countersunk cover, and consisting of rubber cement and an asbestos film, substantially as described; that to the best of deponent's knowledge and belief, no cans for food similar to his invention having been ever made prior to said invention, deponent was greatly disappointed that his patent was not issued to a better advantage; whereupon he informed his attorneys that there were other ingredients that could be used, instead of rubber cement and asbestos, to constitute the affixing and packing medium and the heat-resisting and non-deleterious surface, respectively, and that therefore the claim was too narrow; whereupon his said attorneys informed deponent that said claim was as broad as could be obtained from the Patent Office in view of the previous state of the art and the objections of the Patent Office; that thereupon deponent, relying upon the said statement of his attorneys as to the position and objections of the Patent Office, and being entirely ignorant of the remedy of a defective patent by reissue, and no mention of such a remedy having been made by his said attorneys, took no further steps in the matter, but very reluctantly accepted the situation;  *  *  *  that at about the time of the issuance of said patent deponent formed a company known as the Max Ams Machine Company, which company was organized for the purpose of making and selling machines for making tin cans for food articles, and for making and selling a composition for use in producing the invention set forth in the said letters patent, and also for making said invention, and that said company did carry on such manufacture and sale." That appellant was abroad from May until November, 1897, for the purpose of having a surgical operation performed and from October,

1899, until April, 1900, he was "distressed and worried over the illness and death of his wife; * * * that in consequence of these circumstances, whereby he was unable to devote much if any time to the business of the said the Max Ams Machine Company, said business did not develop and did not attain much importance; that the said the Max Ams Machine Company's business was and is a side issue with deponent, and is distinct from his main business; * * * that in view of the above circumstances deponent has been obliged to devote nearly all his time since the issue of said patent to his said main business." That appellant subsequently entrusted the management of said company to his son, who in December, 1901, through other counsel, learned "of the proceeding and remedy known as reissue of a defective patent;" that appellant thereupon authorized the filing of this application for reissue; that he believes "there is great danger that his invention will be appropriated and his rights thereto invaded by parties who may make, use, and sell his real invention without embodying it in the particular form set forth in the claim of said letters patent, and by substituting for either or both of the ingredients of the coating set forth in said claim other ingredients or for both of said ingredients a single ingredient, thereby avoiding or attempting to avoid said claim, while really appropriating the essence of deponent's invention."

All doubt as to the scope and purpose of this reissue application is removed by reading the above affidavit. The patentee therein frankly states that he was greatly disappointed, at the time his patent was issued, because of the narrow and limited nature of the claim granted him; that he now fears others will take advantage of his failure to obtain a broader claim unless this reissue is allowed.

No good purpose will be subserved by a reiteration of the well-established rules applicable to such a case as this. Suffice it to say that a delay of two years in filing an application for a reissue of a patent with broader claims will usually be treated as an abandonment to the public of everything not claimed in the original. This rule is based upon the analogy between a reissue

application and the case of an inventor who fails to apply for a patent of his invention within two years from the date of its public use or sale, which the statute ordains is conclusive evidence of its abandonment. See *Re Starkey*, 21 App. D. C. 519, and cases cited therein.

The facts relied upon by the patentee do not, in our opinion, constitute a sufficient excuse for his lack of diligence. As above stated, his invention is a simple one, and his patent as issued clearly and definitely describes it. The real object, therefore, of this application, is to secure something not originally claimed, or, if claimed, not pressed, or abandoned. In such a case unusual circumstances must be present, or the delay will be fatal. No such circumstances are shown here. Appellant himself immediately discovered that his patent was "too narrow," and, after discussing the subject with his attorneys, "took no further steps in the matter, but very reluctantly accepted the situation." He now asks relief because he believes his then attorneys were mistaken as to the law. As Mr. Chief Justice Fuller aptly observed in a similar case: "Manifestly this will not do." *Wollensak* v. *Sargent*, 151 U. S. 229, 38 L. ed. 141, 14 Sup. Ct. Rep. 291. There is no allegation that his attorneys did not act in good faith; on the contrary, it is expressly stated that they informed him "that said claim was as broad as could be obtained from the Patent Office in view of the previous state of the art and the objections of the Patent Office." That other attorneys undertook to appeal from the judgment of the Patent Office in 1896 to its judgment in 1902 certainly does not excuse the intervening delay. If the patentee did not think the attorneys who prosecuted his original application thoroughly understood his invention, and for that reason failed to obtain as broad a claim as might have been obtained, he should have consulted other counsel without delay. It is apparent, however, as he himself says, that this was merely a "side issue" with him, to which he gave little thought or attention until a considerable business had been established, when the importance of his invention and the necessity for giving it wider scope was first pressed upon him. We note his statement that he

"knows of no one who is practising or using said invention without his consent, or whose business would be dominated by the reissue of said letters patent to protect said invention;" but this statement would not justify us in overruling the tribunals of the Patent Office and granting him a patent that might affect the business of those of whom appellant has no present information. Moreover, we believe applications for reissue, filed long after the date of the patent, and which have for their object the enlargement of its claims, should be discouraged, and should be countenanced only in exceptional cases.

The decision appealed from will therefore be affirmed, and it is so ordered. The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, as required by law. *Affirmed.*