37 C.C.P.A. (Patents)

### Application of HAYES.

### Patent Appeals No. 5649.

United States Court of Customs and Patent Appeals.

Dec. 12, 1949.

Daniel L. Morris, New York City (Gardner J. O'Boyle, Washington, D. C., and Curtis, Morris & Safford, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JOHNSON, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the Patent Office affirming the rejection by the Primary Examiner of Hayes' reissue application on the ground of laches, and the rejection of claim 30 on prior art.

Appellant was issued Patent 2,298,481, October 13, 1942, on an application filed June 30, 1939. Twenty-one claims were allowed. The invention consists of a sturdy fishing reel designed to meet the heavy strains of deep sea fishing. Features of the reel include a gear drive in which the gears are constantly meshed, rotating only when the line is drawn in, the reel itself being fully mounted on ball bearings, a braking mechanism being applied at each end of the reel, and the reel spool susceptible of exial movement to engage a friction clutch providing a driving connection with a crank handle.

In an affidavit of record the inventor states that he examined the patent specification and claims after the patent issued, and "assumed" his invention was adequately covered. In January of 1943 he sent his attorney five blueprints depicting various designs of fishing reels and asked to be advised whether or not the claims of his patent covered those designs. His attorney informed him they did, and on June 2, 1943, the attorney wrote appellant that the patent claims were of "such sufficient scope to cover modification in the structure" shown in the blueprints, and further filing was unwarranted. When the inventor negotiated with a firm in November of 1944 to license manufacture of the reel, he submitted the same blueprints for study. Interest was displayed in reels depicted on one of the blueprints, and an indication given of an intention by the firm to begin manufacturing the reels as soon as possible. On September 13, 1945, that firm notified the inventor that their patent attorney had advised them that the Hayes patent claims did not cover the reels in which they were interested. Hayes consulted a new patent attorney on the same date, and was informed that "said invention was not covered by said patent and that said fishing reels were not covered by the claims of said patent." Hayes instructed the attorney to prepare a reissue application, which, after some delay occasioned by the attorney's sudden illness and an emergency operation, was filed December 11, 1945. The reissue application made no changes in the drawings or specification of the patent, but added 10 claims which appellant concedes are broader than the claims of the patent.

The examiner rejected the reissue application because of appellant's laches in delaying for more than a year after his patent issued to present his broadened

claims where adequate proof of special circumstances justifying the delay was not made. The examiner held that the erroneous advice given Hayes by his original patent attorney concerning the sufficiency of the claims which delayed the inventor in learning of their actual insufficiency was not such a "special circumstance" as would excuse a delay beyond the one year rule applicable to broadened reissues, citing Wollensak v. Sargent, 151 U.S. 221, 14 S.Ct. 291, 38 L.Ed. 137, and In re Ams, 29 App.D.C. 91.

Before the Board of Appeals, appellant contended that delay in filing a reissue application should be considered in two aspects: the time interval between issuance of the patent and discovery of its insufficiency; and, the time between the discovery of the insufficiency and the filing of a reissue application. The board conceded that the second period was not in dispute as the examiner had raised no question concerning it.

Appellant's position before the board was that inasmuch as he was advised several times by his original patent attorney that his patent claims were sufficient, he was justified in resting on that advice. He also contended that War Production Board restrictions on fishing reel manufacture during World War II not 'only prevented him from licensing the use of his patent, but also prevented anyone else from obtaining intervening rights. The board affirmed the examiner's decision holding that "reliance upon the advice of one attorney, is not sufficient to excuse a delay of more than one year in filing a reissue application with broadened claims." The board also pointed out that the affidavits of record establish that the blueprints submitted to appellant's first patent attorney were the same as those later submitted to the manufacturer. From these *same* designs considered in relation to the Hayes patent, appellant's attorney and the manufacturer's attorney reached opposite conclusions. The board held that the delay of the inventor in discovering the insufficiency of his patent claims was, therefore, due to an error in judgment—not a mistake in the facts—and that an error of judgment does not excuse an unreasonable delay in applying for a reissue patent, citing Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658.

Miller v. Brass Co., 104 U.S. 350, 26 L.Ed. 783, laid down in unmistakable terms the rule that an application for a reissue patent must be made with all due diligence and speed; that, by analogy to the statutory bar of public use, failure to file for a reissue within two years may be considered as an abandonment to the public of matter disclosed but not claimed in a patent; that nothing but a "speedy application for its correction, is admissible when it is sought merely to enlarge the claim"; and, that where a reissue is sought for the purpose of enlarging the scope of a patent, the rule of laches should be strictly applied.

In Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 177, 6 S.Ct. 451, 28 L.Ed. 665, the Court held that a patent may not lawfully be reissued "for the mere purpose of enlarging the claim, unless there has been a clear mistake inadvertently committed in the wording of the claim" and the reissue application is filed "within a reasonably short period after the original patent was granted." Because of the rights of the public, and the opportunity for fraud where considerable lapses of time intervened, the court held that justice and public policy required holding patentees "strictly to the rule of reasonable diligence" in seeking broadened reissues, and that any delay longer than two years "should be made manifest by the special circumstances of the case." That doctrine was affirmed again by the Court in Wollensak v. Reiher, 115 U.S. 96, 101, 5 S.Ct. 1137, 29 L.Ed. 350; Ives v. Sargent, 119 U.S. 652, 662, 7 S.Ct. 436, 30 L.Ed. 544; and Wollensak v. Sargent, 151 U.S. 221, 14 S.Ct. 291, 38 L.Ed. 137. The Court restated the rule in Sontag Chain Stores Co. Ltd. v. National Nut Co., 310 U.S. 281, 293, 60 S.Ct. 961, 967, 84 L.Ed. 1204, as, "a reissue with enlarged claims, not applied for within the two years after the original, is void in the absence of extraordinary exculpating circumstances."

Our predecessor in jurisdiction of appeals from the Patent Office followed the rule of denying a reissue for broadened

claims after a lapse of two years from the issue of the patent without proof of special circumstances to excuse the delay. In re Starkey, 21 App.D.C. 519, 525; In re Schneider, 49 App.D.C. 204, 262 F. 718. That doctrine was adopted and affirmed by this court in Re Kaser, 64 F.2d 687, 20 C.C.P.A., Patents, 1035, and followed in the case of In re Bostwick, 102 F.2d 889, 26 C.C.P.A., Patents, 1122. In re Seabury 27 C.C.P.A., Patents, 777, affirmed the proposition that even where a reissue application is filed *within* two years of the issuance of a patent, the patentee has no absolute right to a reissue presenting broader claims where he is wanting in diligence and promptness in filing the reissue application. In re Croskey et al., 165 F.2d 797, 35 C.C.P.A., Patents, 864, points out that the Act of Congress approved August 5, 1939, 53 Stat. 1212, 35 U.S.C.A. §§ 31, 32, 69, 73, amends sections 4886, 4887, 4920, and 4929 of the Revised Statutes, changing the statutory bar of public use from a two year period to one year, and that inasmuch as the two year rule applying to reissues was drawn by analogy to the time interval of the public use bar, applications for the reissue of patents granted on applications filed subsequent to the effective date of the cited act, August 5, 1940, must be brought within one year of the issuance of the patent sought to be reissued unless there is proof of special circumstances excusing the delay.

Here two years and eleven months elapsed after the issuance of the Hayes patent until the inventor learned of the insufficiency of its claims, and three years, one month, and twenty-eight days elapsed from the issuance of the patent until his reissue application was, filed. The inventor advances as "special circumstances" excusing his delay, the several advices of his first patent attorney, in response to his inquiries, that his patent claims gave him sufficient coverage.

The Supreme Court said in Wollensak v. Reiher, 115 U.S. 96, 99, 5 S.Ct. 1137, 1139: "It follows from this that if, at the date of the issue of the original patent, the patentee had been conscious of the nature and extent of his invention, an inspection of the patent, when issued, and an exami-nation of its terms, made with that reasonable degree of care which is habitual to and expected of men in the management of their own interests, in the ordinary affairs of life, would have immediately informed him that the patent had failed fully to cover the area of his invention. And this must be deemed to be notice to him of the fact, for the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it."

In Ives v. Sargent, 119 U.S. 652, 7 S.Ct. 436, 30 L.Ed. 544, an application for reissue was made nearly three years after the patent issued, and the applicant sought to excuse the delay by establishing the negligence of the patent solicitor who prepared the original application. The inventor, however, had failed to read the patent after its issuance, and the Court held the reissue void as the inventor himself was negligent in discovering the negligence and error of his solicitor in time.

In Topliff v. Topliff, 145 U.S. 156, 171, 12 S.Ct. 825, 831, the Supreme Court said: "The specification and claims of a patent, *particularly if the invention be at all complicated,* constitute one of the most difficult legal instruments to draw with accuracy; and, in view of the fact that valuable inventions are often placed in the hands of inexperienced persons to prepare such specifications and claims, it is no matter of surprise that the latter frequently fail to describe with requisite certainty the exact invention of the patentee, and err either in claiming that which the patentee had not in fact invented, or in omitting some element which was a valuable or essential part of his actual invention. Under such circumstances, it would be manifestly unjust to deny him the benefit of a reissue to secure to him his actual invention, *provided it is evident that there has been a mistake* and he has been guilty of no want of reasonable diligence in discovering it, and no third persons have in the meantime acquired the right to manufacture or sell what he had failed to claim." [Italics supplied.]

In that case, the second reissue was applied for *within five months* from the time

the original patent was granted, and *within thirty-seven days* of the first reissue, and the Court upheld the reissue patent.

In Wollensak v. Sargent, 151 U.S. 221, 228–229, 14 S.Ct. 291, 38 L.Ed. 137, the inventor there, upon discovering the mistake in his patent 148,538, which was issued in 1874, wrote to his solicitors who, in 1878, advised him not to apply for a reissue of that patent, but for the reissue of another patent, 136,801. After the inventor obtained that reissue patent, he filed an infringement suit to restrain an infringement of that reissue patent. That suit was not decided until 1882. Meanwhile, in 1880, the inventor prepared an application for the reissue of Patent No. 148,538. His attorneys advised him that inasmuch as he had a patent broad enough to cover the invention, he should take no action on the reissue application until the infringement suit was completed. The Supreme Court, in considering the inventor's excuse for delay in excess of the two year rule, cited Ives v. Sargent, supra, and said, "In the case at hand the excuse put forward is that the patentee followed the advice of his solicitor, and therefore did not apply within due time. Manifestly, this will not do."

In re Ams, 29 App.D.C. 91, involved a case where the patentee discovered on the issuance of his patent that it was too narrow, but took his attorneys' advice that the claim was as broad as could be obtained, and did nothing for more than five years when he filed a reissue application, seeking relief because he believed his then attorneys were mistaken as to the law. The Court of Appeals of the District of Columbia, in deciding the case, cited Wollensak v. Sargent, supra, and held that, "If the patentee did not think the attorneys who prosecuted his original application thoroughly understood his invention, and for that reason failed to obtain as broad a claim as might have been obtained, he should have consulted other counsel without delay." The court also based its decision on the ground that broadened reissues "should be discouraged, and should be countenanced only in exceptional cases."

The inventor in the case of In re Lees, 50 App.D.C. 163, 269 F. 679, filed a reissue application with broadened claims two years and five months after his patent issued, and sought to excuse the delay on the ground that he was unskilled in patent matters and relied upon his solicitor. The court affirmed the decision of the Patent Office tribunals, holding that special circumstances had not been shown to excuse the delay.

It is true that the drafting of patent specifications and claims is fraught with the peril of understatement, overstatement, and ambiguity. A patentee may perchance disclose less than his real invention, or while describing his invention, do so with such attendant ambiguity that his coverage is atrophied by uncertainty of interpretation in eventuating court contests. Or, having disclosed precisely his real invention, the patentee may fail to claim it with sufficient breadth to reserve unto himself the exclusive use of his real contribution to the art. It is this latter probability which perplexes the patentee's access to a reissue. The issue of a patent with a broad disclosure and narrow claims is surely notice to the public that the inventor is not reserving to himself the exclusive use of the advance in the art which his patent teaches, but does not claim, and where the public has before it such an implied disclaimer for a period of time in excess of the statutory period which serves to bar an inventor from recapturing that which by his express consent has been in public use, it would seem to follow inevitably that by analogy he is as effectively barred by his implied dedication to the public, unless there is some special circumstance present which would excuse the inventor in delaying to serve on the public the only effective notice possible declaring that the implied disclaimer before it is withdrawn. That notice is the reissue application, and if it is not lodged with the public's representative, the Patent Office, within the period measured by analogy to the statutory bar, the patentee's rights may only be revived by proof of "extraordinary exculpating circumstances."

Here the invention was not complicated, at least to Hayes, who set out to solve a specific problem by designing a fishing reel with certain characteristic features. He knew better than anyone else the essence of his invention. He realized the importance of broad claims, for this realization led him to direct his several interrogatories to his attorney. Self-interest and the proper attention he owed as a reasonable man in the management of such a valuable property right as a patent required the exercise of his own careful judgment in appraising his patent coverage after he received his sealed letters patent from the office. He knew far better than his attorney where the essence of his invention lay, and he will not be heard to shift that responsibility for careful judgment which he owed to his own affairs to the shoulders of his attorney. As said by the court in Re Starkey, supra, "But certainly a patentee should know what he has discovered or invented, and should be able to read his own patent correctly. It will not do to make the attorney in all cases responsible for mistakes, if mistakes there are; for it is a necessity of human action, as well as human law, to charge the client with responsibility for the action, mistake, or inadvertence of the attorney."

We attach little weight to appellant's reliance on War Production Board restrictions on fishing reel manufacture during World War II. Such regulations impeded not at all the inventor's freedom to exercise that capacity for judgment which he was bound at his peril to exercise, and the regulations do not constitute such special circumstances as will excuse that exercise or its consequences. It is worthy of note that the licensing negotiations which the inventor began in November of 1944 occurred during the war, and this fact would seem to dissolve the suggested difficulty thought to exist by reason of the War Production Board regulations.

The appellant has shown no special circumstances sufficient to excuse the long delay in applying for a reissue patent, and inasmuch as the settled law requires such special circumstances to waive the applicability of the one year rule, the decision of the Board of Appeals must be affirmed. As this conclusion disposes of the entire application, we need not consider the rejection of claim 30 on prior art.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.