## Application of DUFAULT.
### Patent Appeal No. 6060.

United States Court of Customs and Patent Appeals.
June 24, 1954.

Walter C. Ross, Springfield, for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United

States Patent Office affirming the rejection by the Primary Examiner of claims 3 and 4 of appellant's reissue application.

The claims read as follows:

"3. A burner of the class described comprising in combination, a support member, an elongated tube member extending horizontally therefrom closed at its outer end and provided with ports along the upper side thereof, an elongated strut supported by said support member disposed parallel to and below said tube member, a plurality of plates having upwardly extending notches in lower edges thereof through which said strut extends and openings in upper edges thereof through which said tube member extends, the sides of the notches of said plates and portions of the opposite side faces of said strut diverging similarly downwardly whereby said strut functions with a wedging action in the notches of said plates to cause upper opposite side portions of the plates to move inwardly towards one another to firmly clamp the tube member in the openings of said plates.

"4. A burner of the class described comprising in combination, a support member, an elongated tube member extending horizontally therefrom closed at its outer end and provided with ports along the upper side thereof, an elongated strut supported by said support member disposed parallel to and below said tube member, a plurality of plates having upwardly extending notches in lower edges thereof through which said strut extends and openings in upper edges thereof through which said tube member extends, the sides of the notches of said plates and portions of the opposite side faces of said strut diverging similarly downwardly whereby said strut functions with a wedging action in the notches of said plates to cause upper opposite side portions of the plates to move inwardly towards one another to firmly clamp the tube member in the openings of said plates, with said plates relatively spaced along said tube member and strut."

Appellant was issued Patent No. 2,-409,421, on October 15, 1946, on an application filed on June 30, 1944.

The invention relates to gas burners and more specifically to an improved method of supporting the burner so that it will not warp with heating. The invention claimed in the original patent was for a burner extending outwardly from a support, with a strut beneath the burner, also extending from the support, in parallel to the burner. Fins or plates were provided with circular openings which fit around the burner and were notched to fit into grooves in the strut member. The notches in the plates or fins were diverging downwardly as were the grooves so that when the plates were forced down in the grooves there would be a wedging action which would tend to spread the bottom of the plates and force the top of the plates inwardly so that they would firmly grip the burner.

The claims of the application for reissue now before us are drawn to the same general burner assembly as that defined in the patent claims but are broader in scope in that they do not specify that the strut be provided with grooves.

One of the grounds of rejection by both the examiner and the board is that of laches. It will be noted that appellant waited for more than four and one-half years before filing his application for reissue which seeks protection in claims that are broader than the patent claims.

It is appellant's contention that laches does not apply because he believed his patent adequately secured his invention and that he was not in position to question the scope of the patent claims until he was "forced by circumstances to

make inquiries and gain knowledge, advice and understanding regarding patent claims, their scope and meaning."

In an affidavit of record appellant states that he never intended to accept claims other than those which would secure the invention as broadly as the art permits and in accepting the claims of the patent he was mistaken as to the state of the art and the scope of the claims. That from before the date of issuance of the patent up to and including April 1951 appellant has been employed by his assignee and during that time he has spent at least 70 per cent of his time calling on and conferring with manufacturers and others in connection with his employment and had little time to make a study of his patent until forced to by the circumstances hereinafter mentioned; that in April 1951 he was informed of a cut-back in the use of aluminum for civilian products by 35 per cent and that the assignee of the patent would be required to supply an increasing number of burners with a decreasing amount of aluminum. Also, that there was an increasing shortage of labor locally due to activities in connection with defense orders. That upon being confronted with the shortage of aluminum by 35 per cent and by the shortage of labor, he experimented with and developed a burner having a strut provided with diverging opposite faces thereby reducing aluminum consumption by 45 per cent and also reducing the required amount of labor. That when he discovered that the strut with the diverging side portions functioned in the same manner as the strut provided with grooves having diverging bottoms, he consulted his attorney during the later part of April 1951 and "found that through mistake, inadvertence and accident that the patent did not for errors, defects and insufficiencies, embrace the structure and that the claims were not as extensive as the invention." That upon realizing his mistake, inadvertence and accident, he promptly authorized the preparation and filing of the application for reissue here involved. That at the time the patent was issued there was nothing to cause him to realize that the patent claims were not as broad as they could have been, and nothing to cause him to make inquiries as to the scope of the patent claims until he determined that the grooves as such were not necessary.

The examiner held that, as appellant delayed more than four and one half years in seeking broader claims, it is believed reasonable to assume that any unclaimed material in the original patent has been dedicated to the public and that no reasonable excuse is offered for the long delay during which time no effort was made to determine the coverage afforded by the patent claims. The examiner noted that the structure of the present application is not complicated, the claims are not involved, and that ordinary inspection of the patent should have revealed the true breadth of the claims.

The board was of the opinion that no circumstances have been presented which impeded appellant's freedom to exercise that capacity for judgment which he was bound at his peril to exercise at the time of the grant of the patent to determine the adequacy of the claims and that the circumstances advanced for the delay are insufficient to excuse the delay. Surely the scope of the claims of the patent could have been ascertained just as easily at the time of the issuance of the patent as they could four and one half years later.

■ A patentee has the duty to study his patent promptly, and without a specific motive to appraise its breadth. Self-interest and the proper attention he owed as a reasonable man in the management of such a valuable property right as a patent required the exercise of his own careful judgment in appraising his patent coverage after he received his letters patent. In re Hayes, 178 F.2d 940, 37 C.C.P.A., Patents, 806, and cases therein cited. In the cases of In re Claude, 56 App.D.C. 281, 12

F.2d 816 and H. W. Roos Co. v. McMillan, 6 Cir., 64 F.2d 568, the failure to examine the patent when received was held to be "negligence."

■ If appellant did not understand the claims of his patent it was his duty to call for the aid of an expert. In re Schneider, 49 App.D.C. 204, 262 F. 718.

■ We agree with the holding of the board that:

"While the rule (Ryder v. Coe, Commissioner of Pats. 64 U.S.P.Q., [365] 363) at the time appellant filed instant application requiring an application for reissue with broader claims to be made within *one* year after the original issue is not inexorable, it is enforced with strictness and exception is only made where specific circumstances are shown to excuse the delay."

■ In our opinion no circumstances have been shown to excuse appellant's delay in filing his reissue application.

As the decision of the board must be affirmed on the ground of laches it is deemed unnecessary to discuss other issues presented.

For the reasons given the decision appealed from is affirmed.

Affirmed

JACKSON, Judge, retired, sat for GARRETT, Chief Judge.