GIANT POWDER CO. v. SAFETY NITRO POWDER CO.

*(Circuit Court, D. California. February 18, 1884.)*

1. PATENTS—REISSUE—WHEN ONLY PARTIALLY INOPERATIVE.
   Whenever a patent is so far inoperative that it fails to secure all that the patentee was, by his specifications, entitled to claim, it is inoperative within the meaning of the statute, and the patentee is entitled to a reissue.

2. SAME — DECISION OF PATENT-OFFICE CONCLUSIVE UPON COLLATERAL QUESTIONS.
   The decision of the commissioner of patents is conclusive upon all questions relating to the manner in which a patent was obtained, and the courts can only consider what appears upon the face of the patent.

3. SAME—REISSUE IN LANGUAGE OF ORIGINAL.

    One who, under honest misapprehension, surrenders a valid patent, and takes a reissue which proves to be void, is entitled to a reissue of the first patent in the identical language originally used.

4. EQUITY PLEADING—PLEA—AMENDMENT—MULTIFARIOUS ISSUES—DELAY.

    A plea in equity must be confined to a single issue, unless special leave is obtained to plead double; and an amendment of a plea so as to raise a multitude of issues will not generally be allowed, especially after long delay. The defendant must answer over.

Motion for Leave to File an Amended Plea.

*Hall McAllister* and *George Harding*, for complainant.

*M. A. Wheaton*, for respondent.

Before SAWYER and SABIN, JJ.

SAWYER, J., (*orally*.) In the case of *Giant Powder Co.* v. *Safety Nitro Co.*, a motion for leave to file an amended plea, setting up several distinct defenses, has been argued in connection with the argument as to the sufficiency of the plea already filed. The Giant Powder Company was the owner of original patent, No. 78,317. This patent was surrendered and reissued as patent No. 5,619. Afterwards, for the purpose of correcting a clerical error, patent No. 5,619 was surrendered and reissued as patent No. 5,799. A suit upon this last patent was decided by Mr. Justice FIELD in this court, in which it was held that the reissue was broader in its scope than the original invention as described in the original patent No. 78,317, being for a combination of nitro-glycerine with some non-explosive absorbent material, while the reissue embraced explosive as well as inexplosive absorbents, and Mr. Justice FIELD held that in that particular the reissue was broader than the originally-patented invention, and for that reason void. *Giant Powder Co.* v. *Cal. Vigorit P. Co.* 6 Sawy. 509; [S. C. 4 FED. REP. 721.] In consequence of this decision, patent No. 5,799 was surrendered and reissued again in patent No. 10,267, and in patent No. 10,267 both the specification and the claim are identical with those of the original patent No. 78,317, which had before been surrendered and reissued in the patents before mentioned.

These facts are set up in the plea, and it is claimed that patent No. 10,267 is void, it being identical with the original surrendered patent No. 78,317. That patent was surrendered as being inoperative; and as a reissue can only be had where the patent is inoperative, it is claimed that the original patent must have been held to be wholly inoperative. I think counsel are mistaken in that proposition. A patent may be inoperative, in my judgment, when it is inoperative in part. I do not think it must be absolutely inoperative in its entirety. If it is inoperative so far as not to cover all that the party is entitled to claim, and what he is entitled to claim appears in the specifications, it being inoperative to that extent, I think it would be inoperative within the meaning of the provisions of the statute, and entitle the party to a reissue, covering his entire invention. It does not necessarily follow that patent No. 78,317 was wholly in-

operative, or void, or useless.   I am not aware that it has ever been held by any court to be utterly invalid in all its parts.   It was not even claimed at the argument that the patent, as originally issued, was inoperative, in fact, as to the combination of nitro-glycerine with inexplosive absorbents.

The question of fraud in procuring the reissue, in my opinion, does not arise on this plea, because the question as to whether a mistake has been innocently made in not covering by the patent all that the party was entitled to cover—the question whether there is a fraud in the surrender and application for a reissue—is one of fact, for the officers of the patent-office alone to decide, and their determination is conclusive in a collateral proceeding.   This court can only examine and pass upon what appears upon the face of the patent, and see whether there is anything to indicate its invalidity, or render it void upon its face.   All questions of fact behind the patent are to be examined, heard, and conclusively determined by the commissioner of patents.   This principle has been affirmed over and over again by the supreme court.

I do not think the fact that the patent was reissued in the identical terms of the original patent No. 78,317 renders it void.   The specifications of the patent last surrendered were amended by omitting the objectionable parts.   Patents are constantly reissued for portions of the specifications and claims in the identical language of the original patent.   Each claim in its nature substantially and in effect covers a distinct and separate invention, and is an independent patent in substance and effect.   It might be the subject of an independent patent; and if in any reissue, so far as the patents are identical, those claims are valid in the reissued patent having another or additional valid claim, or a modified claim, or some other change in the specification, I do not perceive why they would not be valid in a patent limited to them alone.   If they can all stand together, I do not see why a reissued patent, covering the identical claims by themselves, may not stand and be valid.   Patents may be reissued in divisions.   It is not necessary that all claims in the reissue should be included in one patent.   They are often issued in divisions, and I suppose that a patent might be reissued in divisions in the identical language as to some of the claims, the changes being included in another and separate division or patent; that is to say, all claims, or inventions, which are fully covered and operative, may be reissued by themselves in one division in the identical language of the original surrendered patent, and all other claims, on amendments to the the specifications, and covering the invention shown by the amended specifications, in another division or patent.   I do not see why a part of the original claims may not be reissued in one division in identically the same language as in the original patent, and the rest in another.   If this can be done without affecting the validity of the reissues, and a party finds that he has made a mistake and surrendered

a valid patent and obtained a void reissue, I do not perceive why he may not fall back upon his old patent and have it reissued on a newly-amended specification embracing that portion which is valid. If parts which are identical are valid in connection with other parts in a reissue, I do not perceive why they should not be valid in a reissue containing no additional matter.

In this particular class of cases it is quite extensively claimed by the bar, I think, that the supreme and some of the circuit courts have made something of a departure in some of their late decisions upon reissues, including the reissue in question. Mr. Justice FIELD held patent No. 5,799 to be void, while several of the circuit judges at the east held it to be valid, and the supreme court has recently repeatedly affirmed the principle of the decision of Mr. Justice FIELD on the circuit. Where courts make a mistake, it may, very properly, be conceded that a patentee may well make an honest mistake himself. On the argument of the plea, my attention was called for the first time to the case of *Gage* v. *Herring*, 107 U. S. 646, [S. C. 2 Sup. Ct. Rep. 824,] in which I think the principle involved in the plea is distinctly determined. The court says:

*"The invalidity of the new claim in the reissue does not indeed impair the validity of the original claim, which is repeated and separately stated in the reissued patent.* Under the provisions of the patent act, whenever, through inadvertence, accident, or mistake, and without any willful default or intent to defraud or mislead the public, a patentee in his specification has claimed more than that of which he was the original or first inventor or discoverer, his patent is valid for all that which is truly and justly his own, provided the same is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right; and the patentee, upon seasonably recording in the patent-office a disclaimer, in writing, of the parts which he did not invent, or to which he has no valid claim, may maintain a suit upon that part which he is entitled to hold, although in a suit brought before a disclaimer he cannot recover costs. Rev. St. §§ 4917, 4922; O'Reilly v. Morse, 15 How. 62, 120, 121; Vance v. Campbell, 1 Black, 823. A reissued patent is within the letter and the spirit of these provisions."*

If a reissued patent is within the letter and spirit of these provisions, as stated, and "the invalidity of the new claim in the reissue does not indeed impair the validity of the original claim, which is repeated and separately stated in the reissued patent," it is not apparent to my comprehension why a second reissue, embracing the valid claim alone of the original patent, would not be valid. I cannot, therefore, say that the patent (No. 10,267) is void by reason of anything asserted in the plea upon the grounds set forth. The plea must therefore be overruled.

With reference to the filing of the proposed so-called amended plea, I think it is not within the reasonable discretion of the court to allow it to be filed at this late day. In view of the circumstances of this case, as they appeared before this court in the various stages of the proceedings, I think it would be an abuse of its discretion to allow the plea to be filed, if it were otherwise a proper plea. In fact, the proposed amended plea sets up all the defenses that can be made to

a patent, and it would involve the trial of the whole case, with the exception of the single question of infringement. The object of a plea, where there is some certain, single issue, requiring but little evidence that will dispose of the whole case if sustained, is to try that issue without putting the parties to the expense of the trial of the case at large; and pleas are limited to a single defense or issue unless, by permission of the court, the defendants are allowed to plead double. If the court allows this so-called amended plea to be filed, it would allow parties to try all the issues in the case with the exception of the one issue as to infringement, and it would be necessary to try the whole case on the merits by piecemeal. Besides, it comes too late. After this plea was originally filed it was stipulated that it stand for an answer so far as it was available as a defense. An answer and replications were filed, and the parties commenced taking testimony. In the course of taking the testimony the solicitor for the defendant ascertained the importance of having the case decided on his plea, provided it was good, and thought that he was at a disadvantage in his then position, as on the question of infringement he would be obliged to disclose the secrets of his composition. He therefore moved, upon affidavits, to be relieved from the stipulation, taking the plea for an answer. He claimed, among other things, to have misunderstood the practice of the court. After argument, the court, thinking that there might be something in the plea, as this exact point had never been decided, so far as it was aware, and, if good, it would save the expense of a trial, relieved the party from the stipulation, and allowed the plea to be set down for argument. It was supposed that the exact question had never been presented before, and when the argument was made upon the stipulation the court had not seen the case of *Gage* v. *Herring, supra,* which, it is thought, decides the principle. I thought that there was, perhaps, something in the plea. At all events, I thought that it was worthy of being carefully considered, for if the plea is good, and the patent absolutely void upon its face, I saw no occasion for putting the parties to the great expense of going to a trial of all the issues in the case. I therefore set aside the stipulation, and allow the defendant to withdraw its answer in the case, and set the plea down for a hearing. It was set down for a hearing, and continued from time to time, until finally it came up for argument, counsel from Philadelphia coming out to argue the case on the validity of the plea. When the plea was called for argument, it was found that there had been a change of solicitors, and an application was made by the substituted attorney at the moment for leave to file the proposed so-called amended plea, which presents all the issues in the case with the exception of the one issue of infringement. I think, under the circumstances, that it would be improper, and it would be an abuse of discretion to allow this so-called amended plea to be filed at this late day.

Leave to file the proposed amended plea is therefore denied.