## NATIONAL NUT CO. OF CALIFORNIA v. SONTAG CHAIN STORES CO., LIMITED.

### No. 9065.

Circuit Court of Appeals, Ninth Circuit.

Nov. 3, 1939.

Rehearing Denied Dec. 5, 1939.

HANEY, Circuit Judge, dissenting.

———◆———

Charles S. Evans and Hugh N. Orr, both of San Francisco, Cal., and Breed, Burpee & Robinson, of Oakland, Cal., for appellant.

Charles E. Townsend and Roy C. Hackley, Jr., both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from district court decree in two suits in equity upon alleged infringement of patents. The patents involved are Kohler Reissue patent No. 20,024 (referred to herein as "reissue patent"), granted June 30, 1936, being reissue of original patent No. 1,958,408 (referred to herein as "original patent"), granted May 15, 1934; and Kohler Design patent No. 89,347 (referred to herein as "design patent"), granted February 28, 1933.

Complaint, alleging infringement of original patent and design patent, was filed October 19, 1935. On January 15, 1936 plaintiff applied for and was later granted a reissue of the original patent, and the original patent was surrendered. Thereupon plaintiff moved for leave to file an amended and supplemental bill of complaint, alleging the facts relating to said reissue and charging infringement thereof. Plaintiff's motion was granted in so far as it involved claims of the original patent reproduced in the reissue patent, but denied as to new claims appearing in the reissue patent. Plaintiff thereupon brought a second suit, charging infringement of the new claims of the reissue patent subsequent to the date of the reissue. The two actions were consolidated for trial, and a single decree was made and entered thereon.

Prior to the trial, plaintiff elected to rely only upon the claim of the design patent as to the first suit, and only upon certain of the new claims of the reissue patent in the second suit. For convenience herein the suits will be referred to as the suit on the design patent and the suit on the reissue or mechanical patent respectively.

### The Design Patent

We will first consider the suit on the design patent. Defendant in its answer denied infringement and alleged its invalidity because the design was not ornamental and was only incidental to mechanical construction of the machine disclosed in the reissue patent. The trial court had before it models of the plaintiff's device and the alleged infringing device, and found no infringement. It was therefore unnecessary for the court to pass on the defense of invalidity. At the argument on appeal this court also had before it the models of the two machines, and from an examination thereof we agree with the trial court that defendant's machine does not infringe plaintiff's design patent.

322

■ In the case of Grelle v. City of Eugene, 9 Cir., 1915, 221 F. 68, 71, we quoted from the leading case on the subject of design patents, Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L.Ed. 731, as follows:

"If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same—if the resemblance is such as to deceive such an observer, and sufficient to induce him to purchase one, supposing it to be the other—the one first patented is infringed by the other."

This test has been uniformly followed in cases involving design patents. See cases cited in Grelle v. City of Eugene, supra. See, also, Eloesser-Heynemann Co. v. Kuh Bros., 9 Cir., 1924, 297 F. 831, 833, and cases cited therein.

Applying the quoted test to the design patent involved herein and the alleged infringing machine, we hold with the trial court that the design patent is not infringed, even if valid.

### Benefits of Decree

Plaintiff assigns as error the finding of the District Court that the device in question was manufactured by the Susu Nut Company, and that the latter company controlled and directed the defense of this suit and hence is entitled to the benefits of the judgment rendered by the District Court against plaintiff. The evidence establishes that the identical machine alleged to infringe was furnished to defendant by the Susu Nut Company, but this Company was never made a party to the actions, and there is no evidence that it participated in any phase thereof.

■ This court in the case of Hy-Lo Unit & Metal Products Co. v. Remote Control Mfg. Co., 9 Cir., 1936, 83 F.2d 345, 348–350, fully discussed the question as to when a person not formally made a party to an action may be estopped by the decision therein. We there said (page 350 of 83 F.2d)

"These decisions by the Supreme Court establish the proposition that, in order for a person not formally made a party to a suit to be estopped by the decision therein, he must either be in privity with a party thereto in the strict sense of the term *or he must not only aid in the prosecution or defense of a suit, but have the right to participate and control such prosecution or defense.* Neither in the supplemental bill or the affidavits are there any facts alleged showing a right of the appellee to participate in and conduct the defense of the action * * ." (Italics supplied.)

Again, we quoted from our previous decision in Carson Investment Co. v. Anaconda Copper Mining Co., 9 Cir., 26 F.2d 651, 657, as follows (page 350 of 83 F.2d):

"We agree with appellee in the contention that the judgment could not be relied upon as an estoppel merely because the Anaconda Copper Company contributed some money toward the defense * * * ; but that does not meet the broader proposition that if the Anaconda Company directed its counsel to confer with counsel for the American Smelting & Refining Company, and if such counsel participated in the preparation of the case for trial and in the trial of the issues, *and if the Anaconda Company had the right to exercise joint control over the litigation,* and did actually co-operate with the American Smelting & Refining Company in the trial and appellate courts * * * it became privy to the American Smelting & Refining Company suit." (Italics supplied.)

■ We think that the same rules apply in *the converse situation, where it is sought* to give one not a party to the action the benefits of the decision rendered therein. There is no evidence whatever to the effect that the Susu Nut Company actually controlled and directed the defense of the action before us, or that it had a right to do so. It therefore follows that the trial court erred in allowing said company the benefits of the decision rendered in favor of the defendant herein. This point becomes immaterial, however, as to the suit on the reissue patent, in view of our decision hereinafter announced that the decree rendered by the trial court in that suit should be reversed.

### Intervening Rights

Answering to the suit on the reissue patent, defendant alleged that the reissue patent was invalid, and that plaintiff was estopped from enforcing any right of action thereon because after the issuance of and with full knowledge of the original patent and its claims, and relying upon the omission therefrom of claims 5 to 17 inclusive of the reissue patent, and before the reissue had been applied for, defendant "had publicly used the device complained of" thereby creating "intervening rights."

Defendant's answers to plaintiff's interrogatories are to the effect that the defendant acquired the alleged infringing machine between March 18, 1935, and April 1, 1935,

and that at the time of said acquisition defendant did not know of the existence of plaintiff's original patent. It further appears that defendant first learned of plaintiff's patent six months after the acquisition of the alleged infringing device, or about October 9, 1935. Plaintiff's application for a reissue patent was filed a little over three months later, on January 15, 1936. This testimony is in direct contradiction of defendant's answer wherein it is alleged that the alleged infringing machine was used by defendant with knowledge of the plaintiff's original patent and the scope of the claims thereof, and in reliance thereon.

Simply stated, appellee claims that since the reissue contained broader claims than the original patent, the use of the machine by the appellee in the period between the date of the original patent and the date of the application for the reissue constitutes "intervening rights"—and that such rights constitute an absolute defense to this action, regardless of notice.

Appellant urges that under the patent laws it has an absolute right to a reissue, provided the application therefor is made within two years after the date of the original patent, and at least in the absence of facts creating an estoppel, defendant-appellee cannot complain. In this connection appellant points to the fact that the defendant admits that it did not know of appellant's original patent until six months after it acquired the alleged infringing machine, and hence there was no reliance on the omission of the broader claims from the original patent.

Defendant in its brief states "The real party here in interest, of course, is the manufacturer. Since everyone is presumed to have notice of an issued patent, we may assume that the manufacturer did have knowledge of the issuance of the original Kohler patent." The argument seems to be that since the manufacturer had presumptive knowledge of the original patent, it must have acted in reliance on the narrow scope of the claims thereof in manufacturing the machine in question, and that the manufacturer thereby acquired intervening rights which would bar an action against it. While it is not expressly so argued in defendant's brief, the theory upon which defendant seems here to rely is that these "intervening rights" give the manufacturer a perpetual license to make, use and sell machines of the type of the infringing machine here involved, and that this immunity from suit would extend to those acquiring such machines from the manufacturer.

■■ As stated above, defendant acquired the machine in question from the Susu Nut Company, and at the time of acquisition defendant had no knowledge of the existence of plaintiff's patent. There is no evidence in the record as to whether the Susu Nut Company [assuming it is the manufacturer] had knowledge of the patent, and relied on the narrow claims thereof in manufacturing the machine. We do not think it sufficient to say, as does the defendant, that "since everyone is presumed to have notice of an issued patent, we may assume that this manufacturer did have knowledge of the issuance of the original Kohler patent," for we have no evidence showing that the manufacturer expended any sums or prejudiced itself in reliance on the omission of claims from plaintiff's patent during the period between the date of the original patent and the application for reissue. The burden of proving a defense of laches or estoppel is on the defendant (Rajah Auto Supply Co. v. Belvidere Screw & Machine Co., 7 Cir., 1921, 275 F. 761, 766), and in the absence of evidence showing such facts, we must assume that the manufacturer did not expend sums during the period in question in reliance on the omission of claims from plaintiff's original patent. Nor is there any showing that the manufacturer entered the field two years prior to the application for the reissue. Therefore the defendant in this suit is not aided by any theory that it acquired the machine from one who had an immunity from suit prior to the time of the reissue, and by reason thereof was likewise protected by such immunity.

We must take the question to be decided as this: Does the acquisition and use by defendant of an admittedly infringing device for a period of less than two years between the date of plaintiff's original patent and the date of plaintiff's application for a broadened reissue [assuming a valid reissue patent], without knowledge of or reliance upon the scope of plaintiff's original patent, constitute intervening rights which will serve as a defense to a suit for infringement, and if so, does the immunity from suit extend beyond the date of the reissue?

To determine this question it is necessary to examine into the law relative to reissues.

The first Supreme Court ruling on the subject was in the case of Grant v. Ray-

mond, 1832, 6 Pet. 218, 31 U.S. 218, 243, 8 L.Ed. 376, which arose prior to the adoption of any statute authorizing reissues. The patentee had petitioned the Secretary of State, then the proper officer in the premises, for a correction of his patent, stating that the specifications thereof were defective. The petition was granted, and the Secretary of State issued to the patentee a new patent for the same invention, with corrected specifications, to run for the unexpired period of the original patent. Upon validity of the proceeding being questioned in court it was held that the original patent might be surrendered when the defect arose from inadvertence or mistake, and without any fraud or misconduct on the part of the patentee, and that the Secretary of State had authority to accept such surrender and to issue a new patent for the unexpired portion of the term of the original patent.

This decision was shortly followed by a Congressional statute regulating the granting of reissues, 4 Stat. at L. c. 162, § 3, p. 559, and this statute as amended is still in effect. Last amendment May 24, 1928, c. 730, 45 Stat. 732, 35 U.S.C. § 64, 35 U.S.C.A. § 64.

We will leave for later discussion herein the grounds for reissue, confining our present discussion to the growth of the doctrine of "intervening rights" as related to broadened reissues.

The doctrine that an applicant for reissue might be barred by lapse of time was first introduced into our patent laws in the case of Miller v. Bridgeport Brass Co., 1882, 104 U.S. 350, 352, 26 L.Ed. 783, wherein the Supreme Court held that an omission of claims from a patent constitutes a dedication to the public of that which is not claimed. After laying down this principle the court says:

"If two years public enjoyment of an invention with the consent and allowance of the inventor, is evidence of abandonment, and a bar to an application for a patent, a public disclaimer in the patent itself should be construed equally favorable to the public. Nothing but a clear mistake or inadvertence, and a speedy application for its correction, is admissible when it is sought merely to enlarge the claim."

Thus, a broadened reissue, applied for more than two years after the date of the original patent, is held to be invalid in the absence of special circumstances justifying a longer delay.

In the case of White v. Dunbar, 1886, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303, the Supreme Court announced that the rule of Miller v. Brass Co., supra, is not qualified by the presence or absence of intervening rights.

The case of Topliff v. Topliff, 1892, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658, is strongly relied on by defendant. It is defendant's contention that the cited case supports a doctrine that intervening rights will invalidate a broadened reissue. An examination of the case, however, discloses that intervening rights were not involved, since the defendant had not built his alleged infringing device until six years after the grant of plaintiff's reissue. The court reviewed the decisions since Miller v. Brass Co., supra, and came to the conclusion that the reissue patent was valid. It reiterated the two-year rule of the Brass Co. case, stating that the lapse of two years will ordinarily, though not always, be treated as evidence of abandonment of new matter to the public to the same extent that a failure of an inventor to apply for a patent within two years from the public use or sale of his invention is regarded by the statute as conclusive evidence of an abandonment of the patent to the public.

In the court's discussion of the claims in suit in the Topliff case, the following statement appears (page 829 of 12 S.Ct.):

"Whether this be an enlargement of the original claim or not, it is for substantially the same invention, and, in view of the fact that the reissue was applied for as soon as the mistake was discovered, *and before any rights in favor of third parties could be reasonably expected to have attached, or had in fact attached,* we think this reissue is not open to the objections which have proved fatal to so many since the case of Miller v. Brass Co., 104 U.S. 350 [26 L.Ed. 783], was decided." (Italics supplied.)

The italicized portion is relied upon by defendant in his contention that the case is authority on the question of "intervening rights". Of the seventeen cases reviewed by the court, all but two involved reissues applied for more than two years after the issuance of the original patents, and in each case where the court had held the reissue invalid it was for that reason. Therefore they can not be said to be authority on the question of intervening rights. There remain two other cases cited by the court in the Topliff decision, Parker & W. Co. v. Yale

Co., 1887, 123 U.S. 87, 8 S.Ct. 38, 31 L.Ed. 100, and Coon v. Wilson, 1885, 113 U.S. 268, 5 S.Ct. 537, 28 L.Ed. 963, to be examined to determine whether they are authority on the question before us.

In Parker v. Yale Clock Co., supra, a period of approximately one year and eight months elapsed between the date of the original patent and the application for reissue. The reissue was held *invalid* because it was not for the same invention as the original, and the Supreme Court approved the finding. We quote from page 41 of 8 S.Ct.:

"the eight claims which are in controversy are a total abandonment of the principles which are stated in the original patent to be those of the invention, and are an introduction into the reissue of a subject-matter which has no relation to the original patent, except that each patent relates to clocks."

While it is true that the defendant had manufactured its clocks six months before the application for reissue, that does not seem to be the controlling factor of the decision. It had uniformly been held that a reissue cannot be granted except for the same invention as the original, and this case merely followed that general rule.

In Coon v. Wilson, supra, the delay in applying for the reissue was only a little over three months. In the interim the defendant had manufactured the alleged infringing article. However, an analysis of this case would indicate that the decision was based upon the fact that the reissue was *invalid* for the same reason as that in the Yale Clock case. The court in this connection said, (page 542 of 5 S.Ct.):

"The description in the reissue is not a more clear and satisfactory statement of what is described in the original patent, *but is a description of a different thing.* * * * The original patent industriously excluded from its scope a continuous band. In the reissue, to cover a continuous graduated band, the two bands, B, B, are converted into a single band * * *." (Italics supplied.)

Two cases decided after the Topliff case, supra, which are relied on by the defendant, where reissues were applied for within two years from the date of the original patent, are Leggett v. Standard Oil Co., 1893, 149 U.S. 287, 13 S.Ct. 902, 37 L.Ed. 737; and Dunham v. Dennison Manufacturing Co., 1894, 154 U.S. 103, 14 S.Ct. 986, 38 L.Ed. 924. It appears, however, that both of these cases were also decided on the basis that the reissues were invalid as an unwarranted expansion of the claims. In the Leggett case the first patent was for a process, the specifications containing the following language [149 U.S. 287, 13 S.Ct. 903, 37 L.Ed. 737]:

"This invention has nothing to do with the glue-lined barrel as an article of manufacture, but relates particularly to a new and inexpensive process of constructing a glue-lined barrel, cask, etc."

The expanded claims of the reissue claimed the barrel as an article; and the Supreme Court held it invalid as being for a different invention. In the Dunham case [154 U.S. 103, 14 S.Ct. 988, 38 L.Ed. 924] the court in holding the reissue invalid stated that the new claims were "neither described nor claimed in the original."

In 1917 the case of Abercrombie & Fitch Co. v. Baldwin, 245 U.S. 198, 38 S.Ct. 104, 62 L.Ed. 240, was decided by the Supreme Court. The defense was that the reissue was applied for seven years after the original application and that "intervening rights" had accrued. The court held that the reissue was valid, though a seven year period had elapsed before the application, since it did not enlarge the scope of original patent. As to the defense of "intervening rights" the court approved language of the trial court to the effect that since the defendant entered the field at a time when the scope and validity of the original patent were still unquestioned, the defendant "took its chances" as to infringement litigation after the granting of the reissue patent. [1]

Keller v. Adams-Campbell Co., 9 Cir., 1923, 287 F. 838, is cited by defendant, it being contended that this court therein held that an "intervening right" may be acquired by a defendant, even without knowledge on his part of plaintiff's patent and within two years from the date of the original, and that such right operates as a perpetual bar to suit for infringement by defendant. While the Keller case was actually decided on the basis of non-infringement, it is interesting to note the quotation from the opinion on

---

[1] The statement of facts by the trial court (Baldwin v. Abercrombie & Fitch Co., D.C., 227 F. 455) discloses that the defendant sold the first infringing lamps in July, 1911. The reissue was applied for by plaintiff in February, 1913, less than two years thereafter.

which defendant so strongly relies. We are italicizing the portion of the quotation which defendant's counsel omitted from his brief, the omission being indicated in the brief by the use of asterisks. We think the completion of the quotation indicates that the court was reasoning toward a conclusion the very opposite to the one drawn by counsel, that is, that the court was reasoning that the notice of the plaintiff's patent and reliance on the limitations thereof on the part of the defendant estopped the plaintiff from suing for infringement. The quotation reads (page 841 of 287 F.) :

"The evidence shows that, prior to any knowledge on their part of the Keller patent, the appellees had been working on their device, and had made and sold a few of them, but subsequently learned of and became familiar with the original Keller patent, *and before proceeding with the manufacture and sale of their own device, and prior to the making of the application for the reissued Keller patent, they applied to the attorneys who procured the original Keller patent for information as to whether their device was an infringement upon that of Keller, saying that they did not wish to infringe, and, being told that it would not be an infringement, they proceeded with the manufacture and sale of their own on a substantial basis.* We therefore think it clear that the appellees had and have such intervening rights as were properly protected by the court below." (Italics supplied.)

Certiorari having been previously granted, 262 U.S. 741, 43 S.Ct. 702, 67 L.Ed. 1209, in the Keller case, it was dismissed by the United States Supreme Court for the reason that the plaintiff's patent had not been infringed and that, therefore, the question of intervening rights was not involved (264 U.S. 314, 44 S.Ct. 356, 68 L. Ed. 705). In discussing the question in connection with its order dismissing the writ, the court took occasion to say (264 U.S. page 317, 44 S.Ct. page 357, 68 L.Ed. 705) :

"We granted certiorari upon the allegation of the petition, not denied by opposing counsel, that the sole question was whether one who makes and sells articles not covered by the claims of an original patent, but embraced by the enlarged claims of a subsequent valid reissue, applied for within 7 months after the original was granted, has intervening rights such that he is not only immune from liability for what

he has made and sold, but enjoys an irrevocable and permanent license to continue to make and sell without restriction.

"The extent of the operation of the estoppel creating intervening rights in such a case presents a question not free from difficulty. That a reissued patent enlarging claims of the original, although not specifically mentioned in section 4916, R.S. [35 U.S.C.A. § 64], is authorized by that section, when the failure to claim the larger claims justified by the actual invention was due to inadvertence, accident, or mistake, is settled by the decision of this Court in Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658, and other cases. That case also recognizes that one who, pending the application and granting of the reissue, manufactures and sells articles which infringe the reissued patent, may be protected on principles of estoppel from the literal application of section 4916, R.S., which makes the operation of the reissue relate to the date of the original patent. In Abercrombie & Fitch Company v. Baldwin, 245 U.S. 198, 38 S.Ct. 104, 62 L.Ed. 240, a change, in the reissue, of the language of an original claim made it cover, not only a bent pipe as shown, but a straight pipe as well, where the substance of the invention included both, and it was held that the intervening rights of immunity of the infringer did not extend beyond the date of the reissue. It is insisted, however, that the Fitch Case was not one of an enlarged claim, or at any rate that a reissue was unnecessary because the original claim would have sufficed. The views of the Circuit Courts of Appeals on the general subject of the scope of intervening rights are not entirely easy to reconcile. [citing cases.] The question, if it were really before us, would be one sufficiently important, therefore to justify our consideration of it on certiorari."

In order to ascertain, if we can, the correct rule, we now proceed to an examination of the Circuit Courts of Appeals cases cited by the Supreme Court in its discussion in the Keller case.

Crown Cork & Seal Co. v. Aluminum Stopper Co., 4 Cir., 1901, 108 F. 845, involved a reissue applied for within seven months after the issuance of the original. It contained broader claims than the original, but the court held it was "for the same invention." The defendants had applied for their patent on the alleged infringing device before the issuance of

plaintiff's original patent. Defendant's patent was issued in the period between the issuance of plaintiff's original patent and the application for reissue. The Circuit Court held that the defendants were presumed to have knowledge of plaintiff's right under the law to a reissue, and as they were also familiar with plaintiff's invention they could not claim that plaintiff was estopped to assert his rights under the re-issued patent.

A. D. Howe Mach. Co. v. Coffield Motor Washer Co., 4 Cir., 1912, 197 F. 541, also involved a broadened reissue for the same invention as the original. The reissue was applied for seven and a half months after the issuance of the original. The court found that the defendant acted with knowledge of plaintiff's device and set about appropriating it. The defense of intervening rights was denied.

In Autopiano Co. v. American Player Action Co., 2 Cir., 1915, 222 F. 276, there were two reissues involved. The first reissue was applied for seven years after the issuance of the original. This reissue surrendered all the original claims and substituted four new claims. Eight months after the application for the first reissue an application for a second reissue was filed, alleging that the surrender of the original claims was inadvertent, and seeking to recapture the original claims. The defendant had commenced the manufacture of the infringing device between the dates of the first and second reissue. The court held that intervening rights would prevent a recovery. There seems to us to be no conflict between this case and the Crown Cork & Seal Co. and A. D. Howe Mach. Co. cases, supra, since here the period of two years from the date of the original patent had elapsed before the application for either reissue was filed. In the Autopiano Co. case the defendant had a right to rely on the surrender of the original claims after that two-year period had expired.

The last case cited by the Supreme Court in the Keller case, supra, is American Automotoneer Co. v. Porter, 6 Cir., 1916, 232 F. 456. The original patent was issued in January, 1906, and the broadened reissue was applied for in March, 1907. Defendant had applied for his patent on the infringing machine before the issuance of plaintiff's original patent. Defendant's patent was issued, and defendant paid the necessary fees for its issuance during the period between the issuance of plaintiff's original patent and his application for reissue. The court held that the defendant had acquired no intervening rights by the payment of such fees—that the defendant was already committed to the payment thereof before the issuance of plaintiff's original patent.

After the dismissal of the writ in the Keller case, supra, the Supreme Court granted certiorari in the case of Ashland Fire Brick Co. v. General Refractories Co., 6 Cir., 1928, 27 F.2d 744. But the petition for a writ of certiorari was thereafter, and before decision, dismissed on motion of the petitioner. 1928, 278 U.S. 662, 49 S.Ct. 7, 73 L.Ed. 569. In the General Refractories case the broadened reissue was applied for within two years from the date of the original patent. The trial court (D.C.E.D.Ky., 1926, 15 F.2d 215,) made a very comprehensive analysis of the cases involving the so-called doctrine of "intervening rights." As a result of such analysis the court held that where the application for a reissue was applied for within two years from the date of the original patent, no intervening rights could accrue. On appeal to the Circuit Court of Appeals (6 Cir., 1928, 27 F.2d 744) the court emphasized the fact that the defendant had acted with knowledge of the plaintiff's device and in reliance on the omission of the broader claims. The trial court was reversed, the appellate court holding that the defendant had acquired intervening rights which made it immune from suit on infringement of the broadened claims. The appellate court conceded that the Supreme Court had never expressly upheld the defense of a private intervening right, but concluded that the basis of the rule was estoppel, and found facts in the case before it to estop the plaintiff from suing for infringement.

In Supreme Mfg. Corp. v. Security Mfg. Co., 9 Cir., 1924, 299 F. 65, this court had before it an infringement suit on a broadened reissue patent applied for five years and five months after the date of the original patent. We said (page 68 of 299 F.),

"Where a patentee seeks a reissue with broadened claims 5 years and 5 months after the original issue, it must be presumed, in the absence of a showing that the delay was unavoidable, that he abandoned the new matter to the public."

and held for the defendant. In our discussion of the case we made the following statement, which is relied upon by defend-

ant as an expression of this court that the use by a defendant of the infringing device between the date of the original patent and the application for reissue will constitute intervening rights which will bar an infringement action (page 68 of 299 F.):

"The appellant here has intervening rights as against the reissue, for it has acquired the right to manufacture and sell that which Ells failed to claim, and, having expended considerable sums of money in the manufacture of a device at a time when the original Ells patent was as yet unsurrendered, it cannot be held to infringe the added claims of the reissue."

The quoted language, however, must be read in the light of the facts before us, namely, where the broadened reissue was applied for more than two years after the date of the original patent.

None of the cases cited by the defendant, and decided by the Supreme Court subsequent to dismissal of the writ in the Keller case, supra, are helpful on the question of intervening rights.

Webster Electric Co. v. Splitdorf Electrical Co., 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792, involved a divisional application, rather than a reissue. Broadened claims were added by the divisional application more than eight years after the filing of the original application, and the court held that the prima facie two-year rule is applicable to divisional applications as well as to reissues.

Powers-Kennedy Contracting Corp. v. Concrete Mixing etc. Co., 282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278, did not involve a reissue or intervening rights, the court holding that the patent in question was invalid because of an unwarranted expansion of the claims by amendment some four years after the original application.

Mackay Radio & Telegraph Co. v. Radio Corp. of America, 1939, 306 U.S. 86, 618, 59 S.Ct. 427, 83 L.Ed. 506, also involves a patent which the court held invalid, because expanded claims introduced an entirely new theory into the patent application. The case is not authority on the question of intervening rights in a valid reissue patent.

It would serve no useful purpose to analyse the remainder of the cases cited by defendant. No case has been cited wherein the Supreme Court has ruled on the extent of the estoppel creating intervening rights in an otherwise valid reissue.

Therefore, as said by the trial court, in General Refractories Co. v. Ashland Fire Brick Co., supra (page 218 of 15 F.2d),

"It is a challenge to any one confronted with such a question [referring to the so-called doctrine of 'intervening rights'] to think it through, and see if it is not possible to reach a personal conviction in regard to it."

It would seem that the doctrine of Miller v. Brass, supra, has its basis in the fundamental rule that a patent applied for after two years of public use is invalid. The court in the Brass Co. case states that an omission of claims from a patent constitutes a dedication to the public of that which is not claimed, and therefore a reissue for the purpose of enlarging claims applied for after two years from the date of the original patent is likewise invalid. The distinction between an invalid reissue and one where "intervening rights" might constitute a defense to an action for infringement is borne out by the language of the Supreme Court in White v. Dunbar, supra (119 U.S. page 52, 7 S.Ct. page 75, 30 L.Ed. 303):

"We attach no importance to the fact that between the date of the original patent and the application for the reissue, the patent to Pecor and Bartlett was granted. * * * *The circumstance that other improvements and inventions, made after the issue of a patent, are often sought to be suppressed or appropriated by an unauthorized reissue, has sometimes been referred to for the purpose of illustrating the evil consequences of granting such reissues; but it adds nothing to their illegality.* That is deduced from general principles of law as applied to the statutes authorizing reissues, and affecting the rights of the government and the public." (Italics supplied.)

The Topliff case, supra, apparently recognizes that there may be instances where "intervening rights" will constitute a defense to an action for infringement, but the later expressions of the Supreme Court in commenting on that case in connection with the Keller case, supra, indicates that the "intervening rights" were not considered as a bar to an action for infringement after the issuance of an otherwise valid reissue. We quote again from the Keller case (264 U.S. page 317, 44 S. Ct. page 357, 68 L.Ed. 705):

"That case [Topliff] also recognizes that one who, pending the application and

granting of the reissue, manufactures and sells articles which infringe the reissued patent, *may be protected on principles of estoppel from the literal application of section 4916, R.S., which makes the operation of the reissue relate to the date of the original patent."* (Italics supplied.)

In other words, it seems as though the Supreme Court recognizes that while a reissue operates back to the date of the original patent, there could be circumstances which would estop the patentee from claiming such retroactive application. This is further borne out by the decision in the Abercrombie case, supra, where the reissue though applied for after the two-year period, was nevertheless held valid. The court there denied the defense of intervening rights after the date of the reissue, but relieved the defendant of accounting for the period prior to the reissue. We recognize that the Abercrombie case is not authority in respect to a broadened reissue, since the court gave as its reason for holding the reissue valid the fact that the added claims were narrower than those of the original, still the reasoning of the court in that case would seem to apply as well to any other valid reissue. That the Supreme Court intended its decision in the Abercrombie case to settle the question of the extent of the estoppel created by intervening rights is further indicated by its expression in the Keller case, above quoted (264 U.S. page 317, 44 S.Ct. page 357, 68 L.Ed. 705):

"In Abercrombie & Fitch Co. v. Baldwin, 245 U.S. 198, 38 S.Ct. 104, 62 L.Ed. 240, a change, in the reissue, of the language of an original claim made it cover, not only a bent pipe as shown, but a straight pipe as well, where the substance of the invention included both, *and it was held that the intervening rights of immunity of the infringer did not extend beyond the date of the reissue."*

▉▉▉ To summarize, the cited cases lay down principles from which the following rules may be drawn:

1. A broadened reissue applied for more than two years from the date of the original patent is invalid in the absence of special circumstances justifying the delay, which invalidity is not affected by the presence or absence of intervening rights. The invalidity of a belated reissue broadening the claims of the patent has its basis in the general patent law invalidating a patent applied for after two years of public use.

2. Since it is two years public use that will prevent an inventor from obtaining a patent, it follows that in the absence of knowledge of and reliance on the original patent, or facts creating an estoppel, a defendant relying on "intervening rights" as a defense must show two years use prior to the date of the application for the broadened reissue. It is conceivable that such use might start prior to the issuance of the original patent, in which event the two years period would expire before the reissue would be barred under (1) above. Or, the broadened reissue might be applied for more than two years after the issuance of the original, but nevertheless be valid because of sufficient excuse for the delay. In such instance, too, a defense of "intervening rights" might arise.

Where the defendant can show two years use of the patent prior to the application for the broadened reissue, it would seem that it might constitute an absolute defense, extending beyond the date of the reissue. This it is not necessary to now decide.

3. When the defense of "intervening rights" is not based on two years user of the patent, it can only arise from knowledge of and reliance on the original patent, or facts creating an estoppel. The defense in these circumstances would prevent the retroactive application of the reissue, and make the defendant immune from suit for infringement up to the date of the reissue. Here the grant of the valid reissue might cut off the rights of the adverse user, and make him liable for infringement thereafter, depending upon the circumstances of the case.

▉▉▉ In the instant case there was admittedly no knowledge of or reliance on the scope of plaintiff's patent, and no facts creating an estoppel. Furthermore, defendant has not shown a two-years user of the infringing patent. The defense of intervening rights is denied.

### Validity of Reissue

▉▉▉ The above discussion presupposes a valid reissue. Defendant, however, contends that the reissue is invalid for various reasons.

At this point it should be noted that a suggestion has been made that the parties stipulated to submission of the case on the question of "intervening rights," and that

it is therefore improper to consider the other defenses. The trial court, having held for the defendant on the defense of intervening rights, found it unnecessary to pass upon the validity of the plaintiff's patent, and therefore the question of the extent of the stipulation did not arise below.

At the trial the following colloquy took place, with reference to submission of the suit on the reissue patent:

"The Court: I am wondering why this case should not be submitted upon the issue of the intervening rights. * * *

"Mr. Orr [counsel for plaintiff]: I am willing to do that, submit it on the question of intervening rights, if counsel wishes to do that.

* * * * * *

"Mr. Townsend: We admit infringement if the patents are valid. We admit any one of these claims, we will take claim 6 or 10 of the reissue is infringed if the patents are valid. * * * As to the prior art we would offer the patents."

Evidence as to patents affecting the prior art was then received.

The only stipulation, therefore, so far as defendant's defenses are concerned, was that plaintiff's patent was infringed, assuming but not admitting the validity of the patent.

The first ground of invalidity urged by defendant is that the error in the original did not arise from "inadvertence, accident, or mistake" as required by the statute, § 4916, U.S.R.S., as amended May 24, 1928, c. 730, 45 Stat. 732, 35 U.S.C.A. § 64.[2]

Other grounds of invalidity urged are that the reissue was for a "different invention;" that the original patent was not "inoperative;" and that "fraudulent or deceptive intent" was not absent in the application for reissue. Defendant also urges the usual defenses of anticipation and the prior art.

We shall first deal with the defenses as related to the validity of the reissue as such.

■ ■ ■ The Supreme Court in Topliff v. Topliff, supra, after reviewing the authorities relative to reissues laid down the following rules (page 831 of 12 S.Ct.):

"From this summary of the authorities it may be regarded as the settled rule of this court that the power to reissue may be exercised when the patent is inoperative by reason of the fact that the specification as originally drawn was defective or insufficient, or the claims were narrower than the actual invention of the patentee, provided the error has arisen from inadvertence or mistake, and the patentee is guilty of no fraud or deception; but that such reissues are subject to the following qualifications.

"First. That it shall be for the same invention as the original patent, as such invention appears from the specification and claims of such original.

"Second. That due diligence must be exercised in discovering the mistake in the original patent, * * *

"Third. That this court will not review the decision of the commissioner upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record; * * *."

This court has on several occasions recognized the rule referred to in the Topliff case, supra, that from the reissuance of a patent it is to be presumed that the law was complied with, and that the decision of the Commissioner of Patents in this regard will not be reviewed unless the matter is manifest from the record. John J. Kitchen Jr., Co. v. Levison, 9 Cir., 1911, 188 F. 658, 661; Perfection Disappearing Bed Co. v. Murphy Wall Bed Co., 9 Cir., 1920, 266 F. 698, 699; Reinharts, Inc., v. Caterpillar Tractor Co., 9 Cir., 1936, 85 F.2d 628, 630, and cases cited therein.

#### Inadvertence, Accident or Mistake

■ ■ ■ On the question of "inadvertence or mistake" we quote from our decision in Perfection Disappearing Bed Co. v. Murphy Wall Bed Co., supra, 266 F. at page 699:

"From the foregoing decision and others it is obvious that the words 'inadver-

---

[2] "Reissue of defective patents; patents for separate parts. Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent. * * *"

tence or mistake' are used in the statute as the antitheses to 'fraudulent intent', and that in the absence of fraud the failure of an inventor or his solicitor to put the claims in such form as will cover the entire invention is 'inadvertence,' within the meaning of the statute, and that to justify a reissue it is not necessary that the original patent shall be inoperative, but it is sufficient if it fail to secure to the patentee the whole of his invention." See American Automotoneer Co. v. Porter, supra, 232 F. at page 460.

Defendant contends, however, that in the instant case the lack of inadvertence, accident or mistake is apparent from the record, and points to certain claims originally presented and then cancelled from the original application. Defendant cites cases to the effect that erroneous judgment in acquiescing in the rejection of claims is not inadvertence, accident or mistake within the meaning of the statute, and claims thus cancelled from the original application cannot be recaptured by reissue. Yale Lock Co. v. Berkshire Bank, 135 U.S. 342, 10 S.Ct. 884, 34 L.Ed. 168; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U.S. 38, 14 S.Ct. 28, 37 L.Ed. 989; Union Switch & Signal Co. v. Louisville Co., 6 Cir., 73 F.2d 550.

An examination of the file wrappers shows that at the time of its presentation, the original application contained twenty claims, all of which were rejected by the patent examiner. Thereupon the attorney for the patentee cancelled all twenty claims and substituted four new claims, which were allowed without further question.

A comparison of the claims originally presented, however, taking into consideration the claims substituted therefor in the original application at the time of their cancellation, with the new claims of the reissue patent, shows that the new claims differ materially both in terms and scope from the cancelled claims, and that the claims of the scope of the claims here in suit were never in, and cancelled from, the original application. In our opinion the lack of inadvertence, accident or mistake is not manifest from the record, and we therefore will not disturb the finding of the patent examiner as evidenced by the reissue of the patent.

Defendant next contends that since the application for reissue was filed after the first suit herein was instituted, and after it was discovered that the original claims were not broad enough to include defendant's device, that fact is evidence of "fraudulent or deceptive intention." We do not agree with defendant in this contention. We find no evidence in the record indicating a fraudulent intent on the part of the patentee in unnecessarily limiting the claims in his original application.

### Inoperative or Invalid

Defendant further contends that the statute has not been complied with in that the original patent was not "inoperative" or "invalid." It points to the fact that the same four claims were incorporated in the reissue as conclusive evidence on the question. We do not follow defendant here. In American Automotoneer Co. v. Porter, supra, the court discussed the "inoperative or invalid" provision of the statute authorizing reissues, as follows (page 459 of 232 F.):

"The statute does not say 'wholly inoperative'; and although a patent may, in the strict sense, be operative if it grants any monopoly of anything, yet if it fails to secure to the inventor the monopoly of his actual invention, it surely does not operate according to the intent of the law. Thomson v. Wooster, 114 U.S. 104, 115, 5 S.Ct. 788, 29 L.Ed. 105; Giant Powder Co. v. Nitro Co. (C.C., Sawyer, C.J.) 19 F. 509, 510. Further, we find the statute saying, 'by reason of a defective or insufficient specification or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new,' and this means (interpreting 'specification' according to its true force) inoperative by reason of defective description or insufficient claims or invalid by reason of too broad claims."

### Same Invention

The remaining requirement of a valid reissue is that it be for the same invention.

An analysis of the cases dealing with reissues will show that there is a distinction well marked between reissues broadening the claims of the original, but confined to the invention therein exhibited, which the courts sustain, and reissues that depart from the invention exhibited in the original and included under its statement of invention.

A reading of the new claims of the reissue herein convinces us that they do not exhibit any change in the nature of the invention described, but that they simply give

a more adequate description of the invention, enlarging the claims but not enlarging the invention.

It is our conclusion that the reissue is one which is authorized by the statute.

### Prior Art

Defendant next urges invalidity of the patent because of the prior art.

Plaintiff company is engaged in the business of importing, packing and wholesale selling of edible nuts. Kohler, for whose invention the patents in suit were granted, was an employee connected with plaintiff company since 1923.

At the suggestion of plaintiff company, Kohler undertook the problem of devising an apparatus by which it would be possible to heat a supply of nuts in the retail stores, and to keep them in the heated condition so that they could be served to the public directly from the apparatus. The machine which is the subject of the instant suit was designed by Kohler beginning the latter part of September, 1931, and continuing to the early part of February, 1932. It was completed and successfully operated during the week immediately preceding February 20, 1932, and on the latter date one machine was actually delivered to a retail store for use.

The Kohler machine, briefly described, comprises a base on which is mounted one or more pans open at the top to allow the addition and removal of nut meats. The pan is arranged to be rotated by driving mechanism including a motor mounted within the base. Adjacent to each pan is mounted a heating element and reflector arranged to radiate and reflect heat onto the pan and its contents. The heating element is arranged in three different speeds. There is also mounted on the base a paddle or stirrer which, as the pan rotates, tends to displace the nuts so that they are uniformly heated. The paddle is removable, and used only when the highest heat is being applied. The claims in suit, however, are silent as to the paddle or stirrer. Defendant's device does not utilize a stirrer.

As affecting the validity of the claims of the Kohler reissue patent, here in suit, defendant relies upon a group of prior art patents, which we will discuss separately.

### Overton Patent

The first patent referred to by defendant is Overton Patent No. 532,089, issued January 8, 1895. This patent had expired, but defendant relies upon the maxim "That which infringes if later, anticipates if earlier." The Overton patent describes a portable drier. It contains no heating element, but constitutes merely a device to stand on a stove. The pan is covered, and there is no means for rotating the same. We are convinced that the Overton device would not infringe any of plaintiff's claims in suit, hence the above referred to maxim is not applicable.

### Pearson Patent

Pearson Patent No. 239,269, issued March 22, 1881, described a coffee roasting machine. The coffee was roasted in batches, and the whole batch was removed when the roasting process was complete. The roasting pan was covered with a screen cover, and the contents could not be removed while the machine was in operation. It was therefore not practical for use as a dispensing machine. Too, the roasting process differed from the Kohler heating process in that the pan was moved bodily into and out of a heating chamber.

### Thompson Patent

Thompson Patent No. 1,786,877, issued December 30, 1930, disclosed a corn popper. It consisted of a stationary pan resting directly on the heating element. The contents of the pan were agitated by means of a revolving arm.

We do not think that the Kohler patent, utilizing a revolving pan with a stationary paddle, can properly be said, as contended for by defendant, to be a mere reversal of parts and hence not patentable. Furthermore, there are other material differences between the Thompson and the Kohler patents. The pan of the Thompson device was closed, thereby making it impractical for use as a dispensing machine, and the machine was not adaptable to gentle heating as was the Kohler device.

### Young Patent

Young Patent No. 858,318, was cited by the Patent Office in its preliminary rejection of Kohler claims, but Kohler patent was thereafter issued over Young.

The Young device was a corn popper. The heater was built in the bottom of the pan, and spaced from the pan bottom by insulating material. The pan was covered, and it was in no sense a dispensing machine.

### Kelly Patent

Defendant places great reliance on Kelly patent, No. 1,945,196, issued January 30, 1934, contending that Kelly was the

prior inventor. There seems little question that if Kelly was in fact prior to Kohler, the Kohler patent is invalid, as the two devices do have many common features, which it is unnecessary for us to point out in view of our finding, as hereinafter explained, that Kohler was prior to Kelly.

It appears that in the fall of 1931, Kelly employed one Grier to develop a nut warming machine. The first lay-out of the machine was started on September 23, 1931. This lay-out however, disclosed a stationary pan, over which was mounted a reflector heater. The second lay-out was started on October 6, 1931. It took three weeks to complete this drawing. This lay-out, too, disclosed a stationary pan. A third lay-out was started on December 11, 1931, and the drawing was completed three weeks later. This was the first time that the Kelly plans disclosed a machine embodying a motor driven pan. A fourth lay-out was started on February 9, 1932, and an experimental model was completed approximately January 2, 1932. Plaintiff contends, and defendant denies, that this experimental model was defective and unsuited for commercial use. Plaintiff points to certain changes that were thereafter made in the machine. Defendant urges that these changes were mere refinements of the paddle and other minor details, and that these improvements do not justify a conclusion that the invention was without practical utility or that its reduction to practice was a failure. This point it is unnecessary to decide, as even conceding that the Kelly machine was reduced to practice on January 2, 1932, Kohler was prior. True, Kohler did not complete and successfully operate his machine until over a month later, on February 20, 1932, but still we must consider the respective dates of conception. As we have said above, Kohler conceived his device in September, 1931. In November, 1931, the Kelly conception still involved a stationary pan.

No contention is made that Kohler was not diligent in reducing his invention to practice, and indeed from the record no such contention could be sustained. Thus the rule that the first to conceive [providing he uses due diligence to reduce to practice] is the prior inventor, is applicable. We quote from Evans v. Associated Automatic Sprinkler Co., 3 Cir., 1917, 241 F. 252, 253, 254:

"The law upon the question of priority of invention is well established. As the evidence shows that both inventors used 'reasonable diligence in adapting and perfecting' their inventions by reducing them to practice, each can carry the date of his invention back to the date of his conception and disclosure [citing cases], and the one who first conceived and disclosed his invention and with reasonable diligence connected his conception with its reduction to practice is the 'original and first inventor' under the statutes, without regard to which of the two first completed the reduction to practice."

### Sawin Invention

Defendant also relies on prior use by the Susu Nut Company of a machine designated the "Sawin machine" as invalidating the Kohler reissue patent. No patent was obtained on the Sawin machine, but there was testimony of a patent application for the purpose of corroborating the proof of prior invention.

The Sawin machine was for the purpose of roasting nuts. The pan, however, was stationary and the nuts were stirred by a rotary paddle. The pan was screwed down on the heating unit, and the nuts were heated in from six to eight minutes. It operated on a different principle than the Kohler device, and was obviously not suitable for use as a dispensing machine.

We conclude, from the above analysis of the patents relied on by defendant that the Kohler reissue patent is not invalidated by the prior art.

### Patentable Invention

There remains the question to be decided, before we can hold the Kohler reissue patent valid, whether the same discloses a patentable invention.

The plaintiff here, as in the question of anticipation, has the benefit of a presumption of validity from the issuance of the patent. Reinharts, Inc., v. Caterpillar Tractor Co., supra, 85 F.2d at page 630.

Prior to the Kohler invention, nut meats were sold chiefly in grocery stores, cigar stands and in a few individual nut shops. With few exceptions the chain stores sold nothing but peanuts. Since the Kohler invention, machines embodying the invention are in operation in over 800 cities in the United States and in 5 foreign countries. The business of the company increased

from $120,000 in 1932 to over $500,000 in 1935.

It is obvious, therefore, that the patent complies with the requirement of the statute that it be capable of beneficial use. We recognize, of course, that utility itself does not conclusively prove invention, but it should be accorded great weight in determining the question of invention. Eibel Process Co. v. Minnesota etc. Paper Co., 261 U.S. 45, 56, 43 S.Ct. 322, 67 L.Ed. 523, 529.

We conclude from an examination of the Kohler reissue patent, and the evidence relating to its utility, that the device required more than ordinary mechanical skill and therefore involved invention.

We hold that Kohler reissue patent is valid, and pursuant to the stipulation hereinbefore referred to we also hold said reissue patent to be infringed.

The decree of the district court in the suit on the design patent is affirmed, except insofar as it extends the benefits thereof to the Susu Nut Company. The suit on the reissue patent is remanded to the district court for further proceedings in accordance herewith. Costs are awarded to appellant.

HANEY, Circuit Judge (dissenting).

The ever-present and important question as to the limits of stare decisis and the propriety of overruling prior cases confronts us in this one.

Pursuant to 35 U.S.C.A. § 64, a patentee may surrender a patent issued to him if "wholly or partly inoperative or invalid" where an "error has arisen by inadvertence, accident, or mistake" and obtain a reissued patent. The reissued patent may contain enlarged claims. Topliff v. Topliff and another, 145 U.S. 156, 170, 171, 12 S.Ct. 825, 36 L.Ed. 658. Those claims which are identical in both the original patent and the reissued patent speak from the date of the original, by the express words of the statute. On the other hand, an enlarged claim speaks from the date of the reissued patent. Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 491, 55 S.Ct. 455, 79 L.Ed. 1005.

Does an appropriator, who makes and sells articles not covered by the claims of the original patent, but embraced by the enlarged claims of a subsequent valid reissue, have such intervening rights as will not only render him immune from liability for what he has made and sold, but also grant an irrevocable and permanent license to continue to make and sell without restriction?

In support of an affirmative answer it can be said that the appropriator, technically speaking, violated no law when he began the appropriation. As the patent then stood the patentee had no right to interfere with the appropriation. By failing to claim all he could claim, the patentee has dedicated the unclaimed portion to the public. The appropriator may have changed his position.

In this connection appellant contends that the appropriator should not be protected unless he has made a change of position with knowledge of the limitations of the original patent.

Opposed to the foregoing arguments and in support of a contrary rule, it may be said that the policy of the patent laws was and is to confer a monopoly on the patentee. Had it not been for the mistake of failing to include all he had invented, the patentee could have prevented the appropriation of his invention. The patentee had no intention of dedicating any part of his invention to the public. Courts for many years have given relief to individuals placed at a disadvantage through mistake, and there seems to be no reason to make only the patentee, of all litigants seeking relief for mistake, bear the burden of his mistake.

With respect to the holding of the majority that the basis for intervening rights is a two-year dedication of the unclaimed part of the invention to public use, suffice it to say that the statute does not so read, and the logical end of such reasoning is that if the patentee has dedicated anything in two years, then no reissue should be permitted after that date. There is no such limitation on reissued patents.

The real basis for the reissue of patents appears to me to be a "mistake". The question as to why the equitable rules regarding relief for mistake should not be applicable to a mistake in patents, where a third person has taken advantage of the mistake, is not argued.

This court 26 years ago decided which of the opposing arguments was correct. Keller v. Adams-Campbell Co., 9 Cir., 287

F. 838, 841. In that case the reissued patent was issued less than two years after the original patent was issued, and the court held: "We therefore think it clear that the appellees had and have such intervening rights as were properly protected by the court below". Inasmuch as it also held that the decree required affirmance on the ground of non-infringement (Keller v. Adams-Campbell Co., 264 U.S. 314, 319, 44 S.Ct. 356, 68 L.Ed. 705), the Supreme Court on certiorari held that the "intervening rights" question was not before it and dismissed the writ. It cannot be said that the case was based upon the theory that the appellees there acquired their rights because of their knowledge of the limitations of the Keller patent, because this court said: "The evidence shows that, prior to any knowledge on their part of the Keller patent, the appellees had been working on their device, and had made and sold a few of them * * *." The appellees in that case could acquire no more rights from the sale of many, than they obtained by the sale of "a few". Whatever rights appellees there acquired were obtained by sale of a few of the devices, and it was held that they were acquired notwithstanding the fact that two years had not expired when the Keller patent was reissued. The majority opinion now holds that no such rights can be acquired where the appropriator had no knowledge of the limitations of the original patent, and less than two years have expired when application is made for a reissue patent. It seems apparent to me that the present holding is in conflict with the Keller case.

Thus this court has spoken. Should we now depart from the rule that there may be intervening rights although less than two years have elapsed when the patent is reissued? The chief value of the rule of stare decisis is to enable a person to pre-figure with some degree of certainty a particular course of action. Opinions are written with that end in view. If we are to adopt the policy of overruling cases, then we should cease preparation of written opinions. There must be a cushion of safety, so that decisions manifestly wrong may be righted, but I believe the end sought—stability—will be more generally achieved if we restrict the overruling of cases to those manifestly erroneous. Manifest error means a view which no reasonable man could entertain.

Considering the opposing arguments, I think it clear that reasonable men could and would differ with respect to the application thereof. Each view has some support in reason, and is not manifestly wrong. For that reason I think the decree should be affirmed.